# The Commonwealth *against* M'Allister et al.

The legal construction of the eighth section of the act of April 9, 1827, entitled " an act for the further extension of the Pennsylvania Canal," with regard to the time within which an application for damages done to lands may be made, is, that such application may be made at the completion of the canal *upon the lands of the applicant,* or within one year thereafter.

By the provisions of this act of assembly, it was not necessary that the viewers who assessed the damages done to lands by the construction of the canal, should also report the whole quantity in the tract of the applicant, and the relevant position which that occupied by the canal had to the whole. Nor is it necessary that they should report whether the land through which the canal passes be improved or otherwise, what title the applicant had to the land, what duration of interest the state required for the purposes of the work, or a draft of the land occupied by the canal.

That the damages assessed were excessive is not an exception which can be sustained in a court of error.

CERTIORARI to the quarter sessions of *Dauphin* county.

There were applications by thirteen individuals for the appointment of viewers in each case, to assess damage done to each of their lands, by reason of the construction of the Pennsylvania Canal. A report was made in all the cases against the commonwealth, who filed exceptions thereto, which were overruled by the court below, and the records were then removed into this court by *certiorari.* The exceptions taken and argued are accurately stated by his honour, who delivered the opinion of the court.

The questions were argued for the commonwealth by *Attorney-general Lewis, Foster* and *Weidman;* and for the respective applicants, by *Alricks, Harris, J. A. Fisher, G. Fisher, Dunlop, Elder* and *Hopkins.*

The opinion of the Court was delivered by

KENNEDY, J.—The proceedings in these cases are founded upon

[Commonwealth v. M'Allister et al.]

two acts of assembly ; and have been removed from the court of quarter sessions of Dauphin county into this court, by writs of *certiorari* sued out at the instance of the commonwealth.  The first of these acts was passed the 25th of February 1826, *Pamphlet Laws* 55, entitled "an act to provide for the commencement of a canal to be constructed at the expense of the state, and to be styled 'the Pennsylvania Canal;'" and the second on the 9th of April 1827, *Pamphlet Laws* 192, entitled "an act to provide for the further extension of the Pennsylvania Canal."

The first exception is applicable to all the cases, except those of *Haines, Hopkins* and *Bell.*  It is in these words: "that the proceedings were premature, and not authorized by law, having been commenced before the canal was completed as contemplated by law." This exception, it is contended, is sanctioned and sustained by the eighth section of the act of the 9th of April 1827, which enacts "that if any person shall consider himself aggrieved by reason of the canal passing through the lands of which he is owner, or by interfering in any manner with his rights of property, he may, *at* the completion of the work *thereupon,* or within one year thereafter, petition the court of quarter sessions of the county in which the damage has been committed, and the said court shall appoint five respectable citizens within the judicial district of which the county is a part, and not residing in or inhabitants of the said county, whose duty it shall be, after being severally sworn or affirmed, to view the premises, and after taking into consideration the advantages of said canal to the petitioner, report such damage, if any, as they or any three of them shall think the owner has sustained by said canal; and upon the approbation of the said court to the report of the said viewers, and the certificate of the prothonotary to the amount, the acting canal commissioner shall and he is hereby required to pay to the said petitioner the full amount of damages and costs assessed as aforesaid."

The opinion of the court given in the Commonwealth *v.* Christian Fisher, and several other cases, all decided at the same time at Sunbury, in 1830, 1 *Penns. Rep.* 462, is also vouched in support of this first exception.  In those cases it was held, that an application by the owners of property, under the eighth section of the latter act, for damages done by the location and construction of the Pennsylvania Canal were premature, if made before the completion of that division of the canal upon which such lands were located, although the work of the canal was completed upon the lands of the petitioner.  I must confess, that if it had not been for this decision, I could not have hesitated a moment in saying that the owner of the land, who is injured by the construction of the canal through his land is not only entitled by the express letter and terms of the act, but likewise by the spirit and meaning of it, to present his petition to the court of quarter sessions of the county in which the land lies, to have viewers appointed for the purpose of assessing his damages, if in their opinion

he has sustained any, the moment that the work of the canal is completed upon his land, or at any time thereafter, within one year. It caused me, however, to suspect at first that I might have misapprehended the true meaning of the act, which is the only thing to be sought after in giving a construction to it; and I was, therefore, induced to read both the act, and the opinion of the court putting a construction on it different from what struck me was the true one ; and to compare the one with the other, in order to satisfy my own mind whether I was mistaken or not in my first impression of it. I have also listened with all possible attention to the very full and ingenious arguments which have been advanced by the counsel. on the part of the commonwealth, in support of the exception, which is certainly in accordance with the decision referred to ; and after having bestowed upon the whole matter all the attention and reflection of which I am capable, I am still unable to entertain a doubt with respect to the correctness of my first impression of the true meaning and intention of the legislature as expressed in the act. If in the course of my examination of this subject I had not had the most perfect conviction produced upon my mind that the exception could not be sustained consistently with the letter, spirit and meaning of the act of assembly, I would have felt it my duty to have adhered to the decision of this court already made upon the question. Even a single decision, solemnly made by this court upon any subject, ought never to be set aside without the most thorough conviction that it is wrong ; but a series of decisions to the same effect I consider conclusive, and as no longer leaving the question, whatever it may be, open for discussion. Where, however, the court has never been called on but once to decide a question such as the present one, growing out of a late act of the legislature, and involving in it considerations of the first importance to the interests of the community and the rights of individuals, it would be going too far to say that it was no longer open to review and correction in future cases, if believed to be erroneous upon farther and more mature consideration.

First, it is said that the exception is supported by a grammatical construction of that part of the eighth section of the act of 1827 which I have repeated, and which gives rise to the question. The word " thereupon" it it is contended, by a true grammatical construction, must necessarily be referred to the word " canal" used before as its antecedent, and be read thus—" that if any person shall consider himself aggrieved by reason of the canal passing through the lands of which he is owner, or by interfering in any manner with his rights of property, he may, at the completion of the work *upon the canal,* petition the court," &c. Thus substituting the words " upon the canal," for the word " thereupon." I cannot, however, give my assent to this, for it appears to me that the word " thereupon" relates to the word " lands," which is the next antecedent, and therefore, according to the strict rule of grammar, is to be pre-

ferred, unless it militates against the plain import of the other parts of the sentence as constructed. It will then stand thus—" if any person shall consider himself aggrieved by reason of the *canal* passing through his lands, he may, at the completion of the work *thereupon,* that is *upon his land,* petition the court," &c. And so far from this conflicting with what would seem to be the meaning of the other parts of the sentence and section, it comports with it most fully in my opinion, as well with every other part of the whole act. I also consider it the more reasonable construction, because the moment that the work of the canal is completed, so far as it passes through the land of the party injured, the quantity of land occupied by the canal, and which will be wanted for it for ever, as well as that which was only wanted for temporary purposes in constructing the canal, and the length of time for which it was so used, all become capable of being reduced to absolute certainty. And the amount of the injury can be ascertained and estimated then with as much accuracy as it can at the completion of the division of the canal upon which the land lies, when, it is admitted by the counsel for the commonwealth, that the party aggrieved by it has a right to have his damages ascertained and paid to him. And again, I think it cannot be fairly questioned, but that it was the intention, as well as the duty of the legislature, in framing the act, to provide for the state's making adequate reparation to the party injured, as soon as the extent of the damage could be fully ascertained with reasonable precision. That it was their duty to do so cannot be doubted, unless we are to disregard the constitutional provisions of our own state, as well as that of the United States, by which it is declared, that no man's property shall be taken, or applied to public use, without just compensation being made. But it is argued, that the advantages to be derived from the canal cannot be ascertained before the work of that division of it at least on which the land lies shall be completed; and as it is expressly required, by the terms of the act, that they shall be taken into the account by the viewers in estimating the damages, who are required to decide whether the advantages are not a sufficient compensation for all the injury done, and if not, to allow damages only for the excess, whatever that may be; and this being the case, the legislature must therefore have intended that the application to the court by petition should be deferred until that time. I admit that there would be great force in this reasoning, if it were only true, in fact, that any more accurate judgment could be formed of the extent or real amount of the advantages to be derived to the owner of the land from the canal, immediately upon the completion of that division of it on which the land lay, than could have been at the commencement of the work. But I deny that this is practicable in any case. It cannot be pretended that any knowledge can be acquired or gained at the completion of the division of the canal, from any actual experience or use that has been had of it, for none can be said with truth to have been had; and I

II.—Z

[Commonwealth v. M'Allister et al.]

apprehend that the first year's experience of the navigation of a single division of the canal would furnish but little light in forming a judgment of what the future advantages of the canal might be equal to. Yet the party is bound to make his application within that year, or otherwise forfeit all claim to compensation; so that I cannot perceive how any thing was to be gained in this way, by deferring the application to have damages assessed until the division of the canal should be finished, more than was to be had immediately upon the work of the canal being completed through the land of the applicant. It is also contended, that the work is not completed until the water has been let into the canal, and is flowing in and passing through it: this is more properly an operation that is to follow the completion of the work; and it might as well be said, that the work of a grist mill, which is intended to be put in operation by the force of water, is never completed until the water is let in upon the machinery of it and all is set in motion. To say, the mere letting in of the water, and seeing it pass throughout a single division of the canal, will enable either the most ordinary or the most intelligent mind to form a more accurate judgment of the advantages or the enhancement in value of the residue of the land which must accrue to the owner from the canal's being made through it, is beyond my comprehension. To entertain such an opinion, and to suppose that the legislature acted upon it in passing the act, it seems to me would be to assert that they doubted of the practicability of excavating the earth in such a form as to cause the water of the river Susquehanna and other streams to pass through the excavation, and to make it answer the ordinary purposes of canal navigation. But surely there is not a syllable throughout the whole course of their legislation on this subject that would for a single moment warrant the imputation of such a reflection upon the understanding and intelligence of that respectable body.

It cannot be then that the party injured is required to defer presenting his petition until the division of the canal shall be finished for the purpose of testing the benefit or advantage of it to the owner of the land by experience; because, as I have already said, none could possibly be had of it by such time. And I think it almost equally clear, that even the year allowed to the party afterwards, within which he must present his petition, if at all, is quite too short a period to afford any satisfactory evidence of the value of the advantages to be derived to the owners of lands through which the canal shall pass, from any actual experience that may be had of it within that time. It is therefore improbable, if not altogether impossible, that the legislature should have deferred the time for obtaining compensation beyond the time of the state's first taking possession of the ground with any such view. In truth the extent and value of the advantages, if any, to be derived to the owner of land through which the canal passes, is in a great measure speculative at the commencement of the work of a division of it, and from

[Commonwealth v. M'Allister et al.]

the very nature of the thing, must be quite as much so at the close of it; and perhaps in most cases for years afterwards. It is now four years since the eastern section or division of the Pennsylvania canal has been finished, and it is admitted upon all hands that its advantages during the present year are developing themselves greatly above any prior year. They seem to be increasing every succeeding year, and no doubt will continue to do so yet for many years to come, unless, as some seem to think, railroads should be introduced and found to answer the end better; but this only tends to confirm the opinion that the real value of the advantages to be derived ultimately from the Pennsylvania, as well as that of every other, is still a subject in some measure of speculation. That the legislature was desirous that the state should make compensation to the party injured by having had his land taken either for a temporary or perpetual purpose in constructing the canal, at as early a time as might be practicable to ascertain with any reasonable certainty the actual extent and quantity of ground used by the state for either purpose, and the length of time for which that portion had been used that was wanted only for temporary purposes, appears to me to be abundantly clear; and more especially when we take into consideration the first provision which they made on this subject by the act of the 25th of Feburary 1826. By the eighth section of that act, the board of canal commissioners, or a majority of them, were to agree with the owners of the lands through which the canal was intended to pass, for the purchase of the lands or temporary use and occupation of them as they might be wanted, on behalf of the state, before the work of the canal was to be commenced, and in case of disagreement, application was to be made to a justice of the peace of the county in which the land lay, for a warrant directed to the sheriff of the same county, to summon eighteen inhabitants of the county, of whom not less than twelve were to value the land, and all damages the owner of the land " should sustain by *cutting* the canal through his land, or by the *temporary* appropriation, use or occupation of it, according to the best of their skill and judgment ;" and in making the calculation or assessment of damages, they were required to take into consideration the actual benefit which would accrue to the owner from conducting the canal, or erecting one of the works connected with it upon his land. The inquisition when taken was to be signed by the sheriff and at least twelve of the inquest, and then to be returned by the sheriff to the clerk or prothonotary of the county; and after being affirmed by the court, the valuation was made conclusive upon all persons, and was required to be paid *immediately* to the owner; which, when done, the state was to be considered seised of such land as of an absolute estate in perpetuity, or with such less quantity or duration of interest or estate in the same, or subject to such partial or temporary appropriation, use or occupation as should be required, as if conveyed by the owner. After one year's experience under this provision of the act of 1826, it was found

[Commonwealth v. M'Allister et al.]

to be very difficult, indeed I believe impossible, to ascertain before hand, with any precision, the quantity of land wanted for *perpetual*, and temporary use and occupation in constructing the canal.  In the progress of the work it was often discovered that the land previously set apart and given to the state for *perpetual* and *temporary* use and occupation in constructing the canal, was altogether insufficient, especially that which had been assigned for *temporary* occupation ; and that the time for which it had been taken and valued, was found to be greatly short of what afterwards become indispensably necessary in order to complete the work.   In consequence of this, the canal makers were subjected to great inconvenience, and occasionally placed completely within the power of the owner of land, whose license for the further as well as the more extensive occupation of it, they were compelled to bargain for on the best terms they could get.   Hence it was thought advisable to pass the act of 1827, deferring the time of valuing the land which it might become necessary to use and occupy in constructing the canal, both for perpetual and temporary purposes, and of assessing the damages which should arise therefrom to the owner thereof, until the work of the canal should be completed through his land ; when the precise quantity which would be wanted in perpetuity for the canal would be most distinctly and permanently marked out by the work of the canal itself, and when all that which had been taken and used only for temporary purposes in constructing the canal, together with the duration of time for which it had been so occupied, could be ascertained with absolute certainty, and the value of the land and the damages sustained, so far as the amount might depend on these matters, could be ascertained with almost equal certainty.   This, as I conceive, was the main inducement with the legislature for passing the act of 1827, and was all that they expected to gain by it.   Nothing but the most unequivocal language declaring it, could induce me to believe that the legislature ever intended to deprive a man of his land or the use of it, and make him wait for compensation beyond the time when it became practicable to ascertain with positive certainty how much was wanted for ever, how much was wanted for a temporary purpose, and the length of time for which the latter was wanted.   Under this view of the subject, I feel perfectly satisfied that the first exception is not sustainable.

The second exception is taken in all the cases, but I do not think that there is even colour for its support.   It is, " that the viewers did not ascertain and report the whole quantity of the tract viewed by them, nor the relative situation of the part occupied by the canal to the whole tract."

In order to sustain this exception, it is said that six acres out of every one hundred and six acres of land granted formerly by the proprietaries, and since by the commonwealth of Pennsylvania to the grantees of land, still belong to the commonwealth for any public use whatever to which she may think proper to apply it ; and that

[Commonwealth v. M'Allister et al.]

she accordingly has a right to take and occupy this excess of six per cent, from the owners of lands through which she has made the canal, without paying for it ; and hence it becomes necessary that the viewers should report the whole quantity owned by the complainant, as well as the quantity taken for the canal, that the court may see whether more than this six per cent has been taken from him ; and if not, that the court may set aside the report, if compensation has been allowed by it. This doctrine appears to me to be novel and altogether unsound ; and is without question repugnant to every thing that is contemplated by the acts of assembly. Such pretension on the part of the state has no foundation whatever in either of the acts already referred to. Neither is it true that the state has any right to claim such a privilege. One of the counsel for the commonwealth spoke of this matter as if the commonwealth were still invested with the title, or right, to the six acres out of every one hundred and six acres included within her grants, in the same manner as if she had reserved that quantity at the time of the grant. There is, however, no ground for this assertion ; because the grant is always absolute in its terms, and without reservation of any portion of the land contained in it. The most that can be said, with any plausibility, in respect to this excess of six per cent is, that the commonwealth granted it to the party without charging him for it ; but still all the right which the state had to it passed by the grant to the grantee. The practice of granting at the rate of one hundred and six acres, upon receiving payment for one hundred, originated with the former proprietaries of this commonwealth when a province, and was intended, doubtless, in some degree to prevent the grantee from being afterwards aggrieved by the location and construction of public ways, not canals, through his land. But the making of public ways through it does not divest him of his right to the land so appropriated, for he is still considered the owner of it, subject merely to the right of passage upon it, which the public acquires by the appropriation of it to that end, in the manner prescribed by law. It is different, however as to the land used by the state in the construction of the canal. The right of property in the land upon which the canal is made, becomes vested by the operation of the act of 1826, according to its express terms, in the state, so that the owner loses all his former right to it. The intention of the legislature is very clearly manifested by the acts passed on this subject ; and it is, that the state shall pay for every foot of land taken by her from the owner, so far as he has not been compensated for it by the advantages which may reasonably be expected to accrue to him by the canal's enhancing the value of the residence of his land.

The third exception is, " that the viewers have not reported whether the canal is located through improved lands or otherwise." If what I have said in answer to the second exception be correct, it follows necessarily that there is no reason for this one. The acts of assembly on this subject do not require the viewers to notice any

[Commonwealth v. M'Allister et al.]

thing of the kind in their report; nor is any distinction taken in them between improved and unimproved land. Compensation must be made alike for all according to its value.

The fourth exception is not sustained. It is in these words, "that it does not appear what title the applicant had for the premises, or that any title was exhibited to, or adjudicated upon by the viewers or the court." The complainant in each case sets forth in his petition, that he is the owner of the land, or was so at the time the canal was made through it: and it is not required by any of the acts of assembly, that the viewers shall state in their report what title or estate the petitioner had to or in the land. Neither is this necessary for the safety or protection of the state. She has got the land; and as the time has elapsed within which application for compensation is required to be made by the act of 1827, no other than the present applicant in each case can claim compensation hereafter for the loss of it. It was sufficient for the viewers to inquire into the right of the applicant to the land when they went to view it, without making mention of it in their report; and having reported in favour of the applicant, it is but fair to presume that they were satisfied by him that his title and right to the land were good, and reporting it to be so would have given the state no better security for it.

The fifth exception is, "that the owners did not ascertain and report the quality and duration of interest in the premises required by the canal commissioners for the use of the state, as required by law and the order of the court." This exception is taken in all the cases except those of Fisher, Landis and Trewig. By the act of the 9th of April 1827, as has been already seen, the viewers are not to be called on to view the ground and make report, until after the work of the canal has been completed through the land of the applicant. The canal being finished through his land, it is obvious then that the state has no use after that for any part of the land, except that upon which the canal has been located and made, which is necessarily wanted in perpetuity. The use to which it has been appropriated by the state is a sufficient indication of the quality and duration of interest and estate that is required by her in it, and the applicant has clearly a right to claim compensation for the fee simple of it. Any portion of the applicant's land which was used for temporary purposes in making and constructing the canal, is not wanted after the work of the canal upon the ground has been finished; and therefore it is unnecessary to report in regard to it, further than to make to the owner thereof a proper allowance for his temporary exclusion from the enjoyment of it, in settling and adjusting the amount of compensation which ought to be given for the whole loss and injury sustained. To set it forth by metes and bounds, and the quality and duration of interest and estate which the canal commissioners or the state had had the use of in making the canal, would be perfectly useless, and could answer no useful object or purpose whatever. It could only be necessary where, for the same compensation, the state

was to have some further specified temporary occupation or use of it, which is not the case.   And although the form of the order of the court of quarter sessions to the viewers requires them in each case to do this, it may be considered supererogatory, because not required or authorized by the act of 1827, which in effect repeals the act of 1826 in what is thereby required to be reported on this point. The form mostly in such cases is left to be made out by the clerk of the court, and if any unnecessary requisitions should be introduced which had not been complied with by the viewers, they might be stricken out, if it were necessary to render the proceeding or report valid.

The sixth exception is to the amount of the damages in each case, which are alleged to be extravagant.   We have not the means of judging of the truth or justice of this exception, even if we have the power to correct it in case of its being well founded.   In the absence of evidence going to establish corruption, partiality or gross mistake on the part of the viewers, we are bound to take their estimate of the damages as correct.

The seventh exception is, "that the viewers did not ascertain or in any manner describe and report the bounds of the lands actually occupied by the canal, as directed ·by the law and the order of the court."   A draft of the land occupied and taken up by the canal in each case has been returned, I believe, by the viewers.   But even this does not seem to be requisite under the act of 1827.   The state, before the viewers were called upon the land, had, by completing the work of the canal through it, given marks and limits to the extent of the land actually occupied by the canal, with all that properly belonged to it, and which would be required for that purpose, that will probably be more permanent and irremovable than most of the land-marks in the country.

Although all this was required under the act of 1826, and very properly too, because the inquest under that act were called upon the land before the work of the canal was commenced, in order to mark out by metes and fixed limits the land which the canal commissioners required for the purpose of locating and making the canal on ; and such other parts of it again as might be wanted for temporary purposes by the commissioners in constructing the canal, specifying also the duration of time for which it was to be occupied ; and allowing a suitable compensation to the owner of the land for any damages which he should sustain thereby, beyond the advantages that would accrue to him from the canal, so that he might be paid the amount of such compensation, and the state or those acting in her behalf be prevented from transcending those limits so marked out, and from holding over beyond the time fixed for temporary occupation : yet it is altogether unnecessary, as I conceive, under the provisions of the act of 1827, which authorized the canal commissioners to enter upon the lands of the complainants without ceremony, and to take and mark out for the state all the land which should be deemed necessary and requisite by them for either perpe-

tual or temporary purposes, in locating and constructing the canal; for which the complainants were not to be compensated, if injured thereby, until after the work of the canal should be completed through their respective lands.   The circumstance of the order of the court of quarter sessions being made out in such form as to require the viewers to do this, requires no answer more than has been given to the same objection under the fifth exception.   It is most likely that this form was made out in conformity to the requirements of the act of 1826, without attending strictly to the alterations made in that act by the subsequent act of 1827.

The proceedings in the cases of Wetzel and Trewig were commenced in September 1826, under the act of assembly of the 25th of February preceding, but the exceptions already noticed, which would have been fatal had it not been for the operation of the act of 1827, do not appear to be applicable to these cases in point of fact. There are a few remaining exceptions, which have been taken in some of the cases, but are not considered of sufficient importance to require special and specific answers.   The most of them relate to matters altogether *dehors* the record, and are not even sustained by evidence, but would not be inquirable into here if they were.   Let it suffice to say, that no one of them is sufficient to justify a reversal of the proceedings.

Proceedings affirmed.