# Pennsylvania and New York Canal and Railroad Company *versus* Billings.

1. The right of the state to take and appropriate lands required in the construction and operation of public improvements, such as canals, is unquestioned, but there is a recognised distinction between that which is required for permanent use and occupation and that needed for temporary purposes only.

2. A deed contained a recital that "the above piece of land is covered by the North Branch Canal basin and embankment;" *Held*, that while this was some evidence that the land belonged to the state it was not conclusive, and that the parties thereto were not thereby estopped from showing that the land embraced in the deed, although covered by the overflow of the canal, was, in fact, never appropriated for permanent use as a part thereof.

3. Whether said land was appropriated for permanent or temporary use was a question of fact exclusively for the jury.

March 16th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Error to the Court of Common Pleas of *Wyoming county;* Of January Term 1880, No. 20½.

Ejectment by the Pennsylvania and New York Canal and Railroad Company against Draper Billings for a piece of land in the borough of Tunkhannock.

Plaintiffs are the owners of the North Branch of the Pennsylvania Canal, which was constructed by the state of Pennsylvania in 1851.   The canal with its embankment covered the land in dispute until the year 1872, when, by the Act of Assembly of April 2d of that year, the plaintiffs were released from all obligation to keep the canal in repair.   At the time the canal was built, the land in controversy was owned by P. M. Osterhout and Willard Jackson, under whom the defendant claimed title.

The plaintiffs offered in evidence the Act of Assembly authorizing the construction of the canal; the Act of April 21st 1858, providing for a sale of the canal to the Sunbury and Erie Railroad Company, and the proclamation by the governor of said sale in pursuance of said act; the Act of 1859, providing for the assess-

ment and recovery of damages on the North Branch Canal, and the record entries of a suit for damages by Peter M. Osterhout and Willard Jackson against said North Branch Canal Company ; a judgment therein for plaintiffs, marked satisfied, plaintiffs receipting therefor in full ; also Act of 1865, authorizing the North Branch Canal Company to change its name to the name of the plaintiffs.

The defendant then offered in evidence various deeds tracing the title of Osterhout and Jackson back to 1807, when title was obtained from the Commonwealth ; deed dated October 29th 1863, from Osterhout and wife, and John Jackson, executor of Willard Jackson, deceased, to M. C. Mercur, and deed from the latter, dated July 1874, to Billings the defendant.

This deed was objected to for the reason that the previous mentioned deed purporting to give title to M. C. Mercur, reciting that the land is covered by the North Branch Canal under the public law of the state, shows that it conveyed no title to M. C. Mercur, and that other title must be shown in M. C. Mercur to enable this deed to Draper Billings to be given in evidence.    Objection overruled.

Defendant then offered to prove by the testimony of Osterhout that the canal, as originally staked out and surveyed, was to cut the northern portion of the land in dispute, but that the owners, asked the engineers to make a basin for their benefit, and to run a bank near the northern line of the lot, and that it was the understanding that the basin as constructed was on the property of these said owners. , Objected to because the fact should be shown by written authority from the officers of the Canal Navigation Company.    Objection overruled.    ⟡

Also, to show by the same witness that there was a dispute between him and Mr. Mercur as to just what the company should pay for canal damages, so that the parties finally agreed that Messrs. Osterhout and Jackson should give Mr. Mercur a deed for the whole of this land ; that there was no consideration between Mr. Osterhout and Mr. Mercur for the damages ; that Mr. Osterhout sold to Mr. Mercur the whole of this land, and that the receipt was placed upon the records after the deed was given, as the inducement held out to Messrs. Osterhout and Jackson for the purpose of getting them to sign this receipt and execute this deed ; also, that the time for adjusting had expired.    Objected to as being entirely irrelevant.    Objection overruled.

The following points were submitted by plaintiff, to which are appended the answers of the court, Ingham, P. J. :—

1. Under the evidence in the case, if you are satisfied that the state of Pennsylvania constructed a portion of the north branch of the Pennsylvania Canal its canal basin or embankment on the land in controversy in this case, your verdict must be for the plaintiff for all the land in dispute that was so taken by the state.

Ans. "We affirm this point, adding the words 'for permanent use and operated as a canal,' so that it will read, 'its canal basin or embankment for permanent use and operated as a canal on the land in controversy in this case, &c.'"

2. If the land described in the deed offered in evidence in this case by defendant from P. M. Osterhout and wife, and John Jackson, executor of Willard Jackson, deceased, to Mahlon C. Mercur, dated October 29th 1863, was for a part of the North Branch Canal, it conveyed no title to him.

Ans. "This we affirm as being the law."

3. P. M. Osterhout and Willard Jackson having filed their claim against the North Branch Canal Company for damages for land, including this in controversy in this case, under the Act of 12th April, A. D. 1859, providing for the assessment and recovery of damages upon the North Branch Canal, and obtained judgment thereon, and that judgment was paid, they and all claiming under them are estopped from claiming title for this land against the North Branch Canal Company, and those claiming under them, unless they claim under a different title from that held by P. M. Osterhout and Willard Jackson at the time they filed said claim.

Ans. "The object for which the claim of P. M. Osterhout and Willard Jackson was filed we regard as a matter of evidence, and we will submit the question to the jury under the evidence, there being no record in the present suit of the nature of the claim changing the point to this form: 'If P. M. Osterhout and Willard Jackson have filed their claim against the North Branch Canal Company for damages for land, including this in controversy in this case,' the only evidence of what that claim contained is parol evidence, and is properly within the province of the jury to determine."

The court also charged: "If you believe that the canal basin was constructed at the instance of Osterhout and Jackson for their benefit, and was not taken for permanent use for canal purposes by the state, then the Commonwealth could not take an estate in perpetuity by the overflow of water on the land of Osterhout and Jackson described in the writ."

The verdict was for defendant; and, after judgment thereon, plaintiff took this writ, and alleged that the court erred in admitting the above evidence; in the answers to the first and third points of plaintiff, and the portion of the charge above noted.

*Felix Ansart*, for plaintiff in error.—There can be no doubt of the right of the Commonwealth, under the Acts of 25th of February 1826, Pamph. L. 55, and 9th of April 1827, Pamph. L. 192, to take the land for the purpose of constructing the basin, nor of the owner's right to have the damages which he sustained by reason thereof assessed under the provisions of the latter act. But the

[Penna. & N. Y. Canal, &c., Co. v. Billings.]

right of the Commonwealth to the land so taken was an absolute estate in perpetuity : Robinson v. West Penn. Railroad Co., 22 P. F. Smith 320 ; Craig v. Mayor of Allegheny, 3 Id. 477 ; Haldeman v. Railroad Co., 14 Wright 425. Where the canal is completed through a piece of land,. the precise quantity which shall be wanted in perpetuity for the canal will be most distinctly and permanently marked out by the banks of the canal itself ; Commonwealth v. McCallister, 2 Watts 199.

The basin could not have been constructed for Osterhout's use without written permission from the directors, managers or commissioners. See Act 10th of April 1826, sect. 9, Pamph. L. 301.

The plaintiff's first point was a correct statement of the law : Commonwealth v. McAllister, 2 Watts 190 ; Haldeman v. Penna. Railroad Co., 14 Wright 425 ; Craig v. Mayor, &c., of Allegheny, 3 P. F. Smith 477 ; Robinson v. West Penna. Railroad Co., 22 Id. 316 ; McKeen v. Delaware Division Canal Co., 13 Wright 424 ; Wyoming Coal & Trans. Co. v. Price, 31 P. F. Smith 156.

The effect of the charge was to make the determination of the matter in controversy to depend upon one question, viz., Does the jury believe that the part of the North Branch Canal which is on the land in controversy was built at the instance of Osterhout and Jackson for their benefit ?

It is true the charge left it to the jury to decide whether it was taken by the state for permanent use, but no instruction was given the jury that would have enabled them to decide correctly whether it was taken for permanent use or not.

*F. C. & R. P. Ross* and *Wm. E. Piatt & Sons*, for defendant in error.—The Act of April 10th 1826, Pamph. L. 301, has no application here. We were not claiming. the company's land, nor did we claim anything in derogation of the company's vested rights, but an arrangement made before the company had any rights there whatever, and in fact denying that the company had any or ever had any rights. The mere filing a claim to cover the whole land would not give the company the land unless originally appropriated. It might be some evidence to rebut our theory and for plaintiff to claim that it was all taken by the company, but it was a question of fact for the jury. It was also evidence in connection with the deeds. In construing a deed, the court must look into the circumstances under which it was made, as evidencing the intention of the parties : Cox v. Friedly, 9 Casey 124 ; Miner's .Appeal, 11 P. F. Smith 283. Every agreement is to be construed with reference to the circumstances under which the parties contract : Callen v. Hilty, 2 Harris 286 ; Williamson v. McClure, 1 Wright 402 ; Bank v. Fordyce, 9 Barr 275 ; Chalfant v. Williams, 11 Casey 212.

Mercur got no title to the damages. They were in the nature of a compensation for injury in the nature of a trespass, and could

not pass by a conveyance of the land : Schuylkill Nav. Co. v. Decker, 2 Watts 344, and McFadden v. Johnson, 22 P. F. Smith 335.

Mr. Justice STERRETT delivered the opinion of the court, May 3d 1880.

The vital question in this case was, whether the Commonwealth, in the construction of the North Branch Canal, appropriated the land in controversy for permanent use and occupation as a part of that improvement. Under the testimony this was a question of fact for the jury. If they had found that the land was so appropriated, the verdict should have been in favor of the plaintiff company, which succeeded to the title of the Commonwealth in the canal. There never was any question as to the right of the state to take and appropriate lands required in the construction and operation of such public improvements, but there is a recognised distinction between that which was required for permanent use and occupation and that needed for temporary purposes only. As to the latter, the title of the owner was not divested, and his enjoyment was only temporarily interrupted; but as to the former, it has been settled by a current of decisions that the title acquired by the Commonwealth to lands so taken and appropriated to permanent use and occupation, was an absolute estate in perpetuity : Commonwealth v. McAllister, 2 Watts 190 ; Haldeman v. Railroad Co., 14 Wright 425 ; Craig v. Mayor of Allegheny, 3 P. F. Smith 477 ; Robinson v. The West Pennsylvania Railroad Co., 22 Id. 316, and Wyoming Coal & Transportation Co. v. Price, 31 Id. 156.

The contention on the part of the plaintiff company is, that by virtue of a taking and appropriation of the land for permanent use and occupation as part of the North Branch Canal, the Commonwealth acquired a title in perpetuity. If such was the case it is conceded that the plaintiff company is now invested with the same title. Hence the vital question on the trial in the court below was as to the taking and dedication to such permanent use and occupation. The burden of proof was on the plaintiff, and the question of fact appears to have been fairly submitted to the jury.

It is claimed that the recital in the deed to M. C. Mercur, Esq., referred to in the first assignment of error, was conclusive evidence against the parties thereto and those claiming under them, that the land described therein belonged to the state at the date of the deed, and that the court erred in ruling otherwise. While the recital was no doubt some evidence against the parties it was not conclusive, and did not estop them from showing that the land embraced in the deed, although covered by the overflow of the canal, was in fact never appropriated to permanent use and occupation as a part thereof. The defendant claimed and introduced testimony to show that none of the land in dispute was so appro-

priated ; that the location of the canal was outside of the southerly line of the lot in controversy, and that the embankment on the northerly line was placed there at the request of the then owners of the lot and for their benefit. Mr. Osterhout, one of the owners at that time, testified that after the lines of the canal were staked he and his co-tenant, Mr. Jackson, requested the engineers in charge of the work to make a basin for their benefit by running the bank near the northern line of the lot. He further says : " The bank, of course, along the road was made for a bridge, and in order to get over there would not have to be any additional bank, but the bank along the northern portion of the lot would be a less embankment than across the corner. By our instruction they made that bank pretty near the northern line of the lot. The bank forming the reservoir was made at our request, and it was so understood by me and Mr. Jackson that the basin was our property." * * * "The lot was a sort of basin itself. It was lower down towards the corner, where they went through with the canal than it was at any other place in the lot." There was other testimony tending to prove substantially the same facts, and that the actual location and appropriation by the state was along the southerly line and outside of the lot now in dispute.

The testimony of Mr. Osterhout was objected to, and forms the subject of the second assignment ; but we think it was competent and relevant to the issue. Nor do we think there was error in admitting the testimony complained of in the third assignment. The fourth assignment of error is not sustained. The qualification with which the plaintiff's first point was affirmed, was entirely proper in view of the testimony before the jury. As we have seen the alleged title in the Commonwealth depended on an actual appropriation for permanent use and occupation as a part of the improvement. If it was true that the embankment on the northerly line of the lot was placed there instead of on the southerly line (where it is alleged by the defendant that the location was actually made and marked), at the request of the owners, and exclusively for their benefit, and at the same time without any disadvantage to the state, so that the lot would be overflowed and thus form a basin for their sole use, it was clearly not an appropriation of the lot by the state for permanent use and occupation as part of its canal. Whether it was the one or the other was the real question in the case, and it was a question of fact exclusively for the jury.

There was no error in that part of the charge to which the fifth assignment relates. If there had been record evidence of the facts alleged in the point to which this assignment refers, it would have been the duty of the court to have instructed them as to its effect. Inasmuch as the only evidence of what the claim contained was in parol, the plaintiff has no reason to complain of the manner in which it was submitted to the jury.

The sixth and seventh assignments relate to portions of the charge in which the court submitted the main question to the jury. The one is practically a repetition of the other, and the real question in the case could not have been more clearly and appropriately submitted to the jury than was done in those portions of the charge complained of in these assignments. The jury was instructed that if they believed the canal basin was constructed at the instance of Osterhout and Jackson for their benefit, and was not taken for permanent use, for canal purposes, by the state, then the Commonwealth could not take an estate in perpetuity by the overflow of water on the land of Osterhout and Jackson, described in the writ. There was testimony which properly carried this question to the jury, and we discover nothing in any of the assignments that calls for a reversal of the judgment.

Judgment affirmed.