# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

---

### MIDDLE DISTRICT—HARRISBURG, 1882.

---

### Pennsylvania Canal Co. *versus* Harris.

1. In an action of ejectment for land where the disputed question is the amount of property taken by the state for the construction of a canal, and the exact location of such property, it is error for the court to submit the evidence and theory of one party prominently and fully to the jury, and not to call their attention to the main points of the opposite party's case.

2. The evidence in the present case reviewed, and the charge of the court held, under the circumstances, to be open to the objection above specified. The judgment, in consequence, reversed.

3. The court, in referring to a portion of the evidence in the above case, charged the jury that if the western line of the canal owned by plaintiffs was pushed over it would appropriate the land claimed by the defendant. *Held*, that as this could readily be construed as a caution to be careful about giving much weight to the evidence which tended to give to the plaintiffs land claimed by the defendant, it constituted error calling for reversal.

4. In determining the exact location of a plot of ground taken by the commonwealth for the use of a canal, a sharply defined cut in the solid bank or rock on the side of the canal may be as satisfactory a monument of location as the track of a highway on the surface of the ground.

5. In ascertaining the boundaries of land taken by the commonwealth for a canal, if satisfactory monuments on the ground cannot be found, regard must be had to the purpose for which the land was to be used, as bearing on the quantity probably taken. The presumption is that the state took possession of land of a width necessary for the reasonable

[80]

[Pennsylvania Canal Co. *v.* Harris.]

enjoyment of all rights pertaining to a canal. This presumption stands until removed by evidence of actual possession taken of less ground. It is not overthrown by evidence that the state did not use all of it continuously.

6. Time does not run against the commonwealth. Hence, in an action of ejectment for land appropriated by it for canal purposes, brought within less than twenty-one years after the state has parted with the title, it is error to call the attention of the jury to the length of time during which the adverse claimant has had possession. The jury should be distinctly told that such claimant acquired no title by virtue of his possession.

May 29th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the court of Common Pleas of *Dauphin county:* Of May Term 1882, No. 15.

Ejectment, brought August 10th 1867, by the Pennsylvania Canal Company against George W. Harris, et al., for a piece of land described in the writ as follows.: " A strip of land situate in the Fourth and Fifth wards of the city of Harrisburg, adjoining Herr street on the north, the Pennsylvania canal on the east, lands of the Central Iron Works, Richard J. Haldeman, George W. Harris, and Catharine M. Antes, on the west, and State street on the south, extending along the said canal from Herr to State street, about sixteen hundred and eighty-seven (1,687) feet, and back from the canal about eighteen feet westward along Herr street, and about thirty-five feet westward along State street, being part of a larger tract or parcel of land (containing in all eight acres and seventy-two perches) formerly the estate of William Maclay, deceased, which was taken, appropriated, and paid for, by the Canal Commissioners of Pennsylvania, for the use of the Pennsylvania Canal."

It was admitted that the title to the premises in question, for many years prior to January 1st 1828, was in the heirs of William Maclay, deceased.

The plaintiff showed the following title : In 1826 the State board of Canal Commissioners entered on the land of the heirs of William Maclay, and appropriated a portion of it for the construction of the Pennsylvania Canal and basin. In 1828, upon the petition of the heirs of William Maclay, viewers were appointed, who designated the quantity of land taken for canal purposes as eight acres seventy-two perches, as per draft and survey attached to their report ; and they assessed the damages at $1450. Their report was duly confirmed by the court, and the said damages were paid by the State to said heirs. The canal survey attached to the viewers' report was produced in evidence. It was made July 31st 1828, by John Roberts, and

5 OUTERBRIDGE.— 6

its accuracy was admitted by both parties. By virtue of the Act of May 16th 1857, the Pennsylvania Canal and appurtenances was sold by the State to the Pennsylvania Railroad Company, which company, by deed dated March 30th 1867, sold and conveyed the said Pennsylvania Canal and its appurtenances to the Pennsylvania Canal Company, plaintiff.

The plaintiff claimed that the strip of land in controversy was part of the said eight acres seventy-two perches originally taken and paid for by the State for canal purposes.

The defendant, Harris, claimed title under a partition of the estate of William Maclay, deceased, confirmed in December 1827, whereby two lots or strips of ground described as bounded on the west by Fisher's Road, and on the east by the centre line of the bed of the Pennsylvania Canal (subject to the rights of the State therein for canal purposes), were allotted respectively to George W. Harris and Mary his wife in her right, and to William M. Hall. The defendant further showed title in himself to said last mentioned lots, by purchase and conveyance from said William M. Hall in 1830, and by deed from Garrick Mallory in 1856. The defendant claimed that these lots covered the premises in dispute.

The principal question, therefore, was as to the true location on the ground of the west line of the original canal survey. The plaintiff claimed that its location was as approximately indicated by the solid line in the following diagram ; the defendant claimed that its true location was as approximately indicated by the dotted line. The strip of land lying between these two lines, marked A, though not exactly the same as that described in the writ, constituted the real premises in dispute.

[Pennsylvania Canal Co. *v.* Harris.]

The plaintiffs, in order to prove the location of the western line of the canal survey, as claimed by them, produced surveyors and other witnesses who testified, substantially, to the following effect: In 1864 the water was drawn from the canal, and sediment and mud were taken out from the canal bed at several points, whereby the line of the original excavation was found by the marks of the pick on the slate rock.. Measurements from that line gave the centre line of the canal and the outer line of the original tow-path, all of which tended to maintain the plaintiffs' claim as to the location of the said western line of the canal survey. The tow-path, originally on the west side of the canal, had been subsequently changed to the east side, and the west side thereafter became the berme bank. There were no marks on the ground of the original canal survey by which to locate the original canal survey, other than the canal itself and a road hereinafter mentioned; and as, at the southern end of the survey, the canal had been moved to the eastward in 1857, the original "place of beginning," at the southeast corner could not be found. A starting-point was adopted as and for the northwest corner of the survey (marked in the foregoing plan "Runk Corner"), and no engineer or surveyor called on either side questioned the correctness of the point thus established. The plaintiffs' surveyors testified that, running the western line from this starting-point, and continuing the survey around from the line thus run, and making the measurements according to the original and known dimensions of the canal, the tow-path, and the berme bank, the result corresponded with the original embankments around the basin on the eastern side of the canal, thus verifying the location of the western line of the original canal survey, as claimed by plaintiff. One of the plaintiffs' surveyors testified that he reached a similar result, as to the location of the disputed line, by procuring from the files of the auditor-general's office the original contract and specifications for the construction of the canal at this place, and locating the canal and survey in accordance therewith. The western line of the canal survey, as thus located, included the premises in dispute.

The defendant, in order to prove the location of the western line of the canal survey, as claimed by him (see dotted line in diagram), showed that the said canal survey or "appraisal draft" made by John Roberts in 1828 called for a road as a monument on the ground substantially as shown on the foregoing diagram; that said road was nearly parallel with the western line of the canal survey, the intervening strip of land, belonging to defendant, being distinctly shown on said survey, and not included in the 8 A. 72 ps. taken for canal purposes; further, that the location of said road had not been changed within the

recollection of the oldest inhabitants—certainly not for fifty years—and that said road is now a street in the city of Harrisburg; that by taking said road as a monument on the ground and measuring from the eastern line thereof, the western line of the canal survey must be as indicated by the dotted line on the above diagram; further, that defendant and his predecessors in title had had possession of the premises in dispute before and ever since the partition of the Maclay farm in 1827. The defendant also called surveyors who located the line in the position claimed by him by reference to the plans and descriptions of record in the said partition proceedings. At the time of said partition it was supposed that the State, in appropriating land for canal purposes, took only an easement therein, and the partition deeds therefore called for the centre line of the canal as a boundary; and the defendant at one time claimed the right to re-occupy the land originally used as a tow-path and afterwards abandoned for that purpose, when the tow-path was changed to the opposite side of the canal. The defendant now claimed that the State acquired no title to land temporarily occupied and afterwards abandoned; that those claiming under the State could not show title to land outside the berme bank, and that to claim that the berme bank extended to the line, as claimed by plaintiff, a distance of about thirty-five feet, was absurd.

The plaintiff, in rebuttal, offered the original record of a road, claimed to be the same road shown on the canal survey, showing that the original location of said road was different from its present location, and crossed the line of the canal diagonally; that said road was known at different times by various names; on the canal survey it was marked "Road to Harrisburg"; in the partition proceedings it was called "Fisher's Road," and in the record in the Quarter Sessions it was styled "Faulkner's Mill Road."

The court charged, inter alia, as set forth below, in the assignments of error.

Verdict for the defendant, and judgment thereon, whereupon the plaintiffs took this writ of error, and filed the following assignments of error, viz.:

I. The court erred in instructing the jury that the great lapse of time and long occupancy of the land in dispute were important elements for their consideration, when there were no facts in the case to justify the submission of these questions to the jury.

The truth of this assignment will appear from the following extracts from the charge of the court, viz.:

1. " Perhaps you will have no difficulty in coming to the conclusion that neither the State nor anyone claiming under it ever

had or was in possession of this narrow strip of ground lying outside of what was used as the towing-path, and now the berme bank of the canal—in other words, that the possession has not been out of the defendant, Mr. Harris, and his predecessor in title, since 1791. That, however, is for you under the evidence. Has that tract that is in controversy been out of the possession of Mr. Harris until the present suit? Are you satisfied that during the time the state, and subsequently the railroad company—for you will recollect the railroad company owned the canal subsequently, but before the suit was brought —are you satisfied that this property was during this time in the possession of the defendant? Was there ever possession claimed by either or any one adverse to Mr. Harris prior to the one upon which this suit is based?"

2. "Now the result of the location of this survey by Mr. Roberts was so as to leave Mr. Harris in possession of this land in dispute, which, as we have said, he had been in possession of for nearly forty years, from 1828 to 1867."

3. "The plaintiffs say that the location made by them— Mr. Whitney and others—satisfies the calls of the survey. In this they all agree, and of this they are all competent to speak; and they say it locates the draft accurately, and certainly satisfactorily to them; but the difficulty is, that it takes Mr. Harris' land, or lands, of which he has been in possession for this great length of time."

4. "Again, we have mentioned, as we have proceeded, the fact that this land was in the possession of Mr. Harris for this long period. It was not used by the canal, possibly because they did not require it—Mr. Worrall seems to think that was the reason—we say possibly because they did not require it— possibly because they did not take it; that is within the survey upon the ground. Mr. Worrall thinks, possibly, that that is the reason for concluding that the line, as he considers it should be run, is the correct line. It did not interfere with the use for which the land was taken; and it leaves Mr. Harris in possession of the land he had all through this long period of time."

5. "Now we have said that Mr. Harris was in possession for a long time. We must also say that the rights of the Commonwealth are not affected by lapse of time, or by the negligence of its officers; but we do say that the plaintiffs must establish their right before they can turn the defendant out of a possession so long had."

II. In contrasting the respective theories of the plaintiff and defendant, adopted for the location of the survey in dispute, the court erred in confining the jury to one view of the plaintiff's case, when there was more than one which they

[Pennsylvania Canal Co. *v.* Harris.]

should have considered. This appears from the following extracts from the charge, viz. :

1. " Now, let us just at once look at the theories or the practice which has been adopted by these different surveyors to determine the location of this plot. Mr. Roberts, you will recollect, finding the road upon the ground, as he says, and the measurements given, he has no difficulty in locating the canal or in locating the survey; for he measures from the road as called for upon the ground—one perch and seven-tenths at one end, and two perches and five-tenths at the other end; and he says that must give the western line of the survey; and if you have the western line, you can locate the plot of ground." . . .

2. " Now, Mr. Whitney, and the gentlemen who followed him, go upon the ground; and with this (northwest) corner as a fixed corner, or assuming it to be fixed or obtained by others—for instance, taking the canal plot or survey—they get the same corner. It makes very little difference how they get it, if it is accepted as the starting-point in their investigation. Starting out with that, they run this survey by the compass and the transit, and by the approved methods of ascertaining lines, and they agree with remarkable unanimity that the lines thus run will take a piece of the ground now in the possession of Mr. Harris."

III. The court erred in impressing it upon the jury that it was their duty to find the location of the canal survey from the " old road," and from testimony of measurements to and from it and from other points made subsequently to the date of the canal survey of July 31st 1828, as shown by the following extracts from the charge, viz. :

1. " The road, then, was the only monument mentioned in the appraisal plot—in the canal plot—except the canal itself. Now, this road is perhaps the public road spoken of, and marked upon the draft, and relied upon by Mr. Roberts as a well-established and safe monument from which the measurements may be taken, and by which the location of this piece of ground—an acre, or less than that—was unmistakably determined. That is, if the road itself is established as a fixed monument upon the ground—that is a result possible in the mere matter of measurement in the survey before you."

2. " Is the road located upon the ground? It is mentioned upon the draft. Can it be found or followed upon the ground? That will depend upon the evidence, when you come to examine it in reference to the subject, and upon which I will speak hereafter in reference to that fact."

3. " Mr. Roberts, you will recollect, finding the road upon the ground as he says, and the measurements given, he has no difficulty in locating the canal, or in locating the survey; for

the measures from the road as called for upon the ground—one perch and seven-tenths at one end, and two perches and five-tenths at the other end; and he says that must give the western line of the survey; and if you have the western line you can locate the plot of ground.   But the western line is the line that is in dispute here, or is now in controversy; and if pushed over will appropriate that piece of land claimed by Mr. Harris." . . . . " The line, we say, was obtained by Mr. Roberts by actual measurements located upon the ground; being a straight line, having but two corners, which were easily run and marked upon the ground.   That line, we say, leaves Mr. Harris in possession of this property."

4. . . . . " Roads do shift—are changed—but we must take this as we have the evidence before us; because it is pretty manifest that the road is an established monument, as Mr. Roberts found it upon the ground at this time—if it was there in 1828 just as it now is, with the same lines, and the measurements were made from it—that is, the calls upon the draft—it is a very small thing to locate and obtain this tract, because it gives the distances to the different points of this survey."

5. " Now this location made in this way is resisted, and we turn again to the evidence.   We have a number of aged witnesses put upon the stand.   Mr. Wiestling testifies that he has known this Fisher's road for more than sixty years,—that is, prior to the making of the canal, or making of this survey,—and that it runs now as it ran then.   John B. Simon testifies that he worked upon the canal in 1825; and that Fisher's road has not been changed since 1823.   Cyrus J. Reese testifies that he has known it since 1822, and that the road is there without change. Jacob Zarger, I think, testified that he knew it for fifty-five or six years, and that there has been no change—running back prior to the making of the canal.   Are they right, or mistaken? Because if they are right, they locate that road upon this draft as called for."

IV. The learned court erred in persistently belittling the evidence of the plaintiff, and so unfairly magnifying the witnesses and testimony given by the defendant as to deprive the plaintiff of its legal rights, and to compel a verdict against both the law and the evidence; and especially in the following parts of the charge, viz.:

1. "Now, it appears to me that Mr. Roberts seems to have gone about his work in a practical way.   He was employed by Mr. Wierman, and it would also seen that a Mr. Runk was in the employ of the company the same way . . . . that Mr. Runk was with Mr. Alexander Roberts, and these two gentlemen were upon the ground, although it appears that Mr. Alexander

Roberts did the work, he was responsible; he was not inter-
fered with, I think he said, by Mr. Runk at that time."

2. "We may here, then, follow Mr. Roberts upon the
ground, and he was guided by the light reflected upon the work
by his father's knowledge of the ground—of the facts and cir-
cumstances connected with these surveys.  The partition survey
and the appraisal survey were made by him within a few
months—I think it was said within eight months of each other—
and the one to some extent, at least, is explanatory of the other.
. . . Now, Mr. Alexander Roberts being upon the ground, with
the draft in hand, what would he do?  He tells us what he did.
You will recollect his evidence.  He looks to the draft . . . .
We find, as we say, Mr. Alexander Roberts upon the ground
with this draft in his hand.  He wants to locate it.  He says
there is no fixed monument upon the ground except the public
road to Harrisburg.  Upon the one appraisal draft it is called
"A road to Harrisburg," whilst upon the partition draft I think
it is called "The Fisher's Road;" and that is the monument
he speaks of, and relies upon.  The other relies upon the canal,
which they say is a land-mark upon the ground, and a very
important one, in solving and determining the rights of these
parties."

3. "Now the natural question may be asked, was Mr.
Alexander Roberts a competent surveyor?  He was appealed
to—he was selected for the work by Mr. Wierman himself, a
surveyor or engineer of acknowledged ability, and the repre-
sentative of the plaintiff's interest.  Now the result of the loca-
tion of this survey by Mr. Roberts was so as to leave Mr. Harris
in possession of this land in dispute, which, as we have said, he
had been in possession of nearly forty years—from 1828 to
1867."

4. "Now, ordinarily, I think, we might suppose, if Mr.
Roberts was a competent surveyor, with the draft before him
and upon the ground—with the assistance to some extent, prob-
ably, of Mr. Runk—this work would be satisfactory and con-
clusive."

5. "Mr. Roberts, you will recollect, finding the road upon
the ground, as he says, and the measurements given, he has no
difficulty in locating the canal, or in locating the survey; for
he measures from the road as called for upon the ground—one
perch and seven-tenths at one end, and two perches and five-
tenths at the other end; and he says that must give the western
line of the survey; and if you have the western line, you can
locate the plot of ground.  But the western line is the line that
is in dispute here, or is now in controversy; and if pushed over,
will appropriate that piece of land claimed by Mr. Harris."

6. "Now, it appears to me, that that point, or the points

upon that end, the southeastern and southwestern points, are the shifting factors in this dispute. The one is pushed over on Mr. Harris' ground, and the other, it is said, is just where it ought to be."

7. "They (Worrall and Shunk) are very positive, and their testimony is very full, to the effect that these points have been properly ascertained, and the canal survey located properly by Mr. Roberts. They give some substantial reasons for their conclusion. I confess I was struck with the remark by Mr. Worrall that he felt safe when the western line was ascertained."

8. "I have no doubt if Mr. Africa would start with the road as a monument upon the ground, that he would locate it as Mr. Shunk does. In other words, not because of the correctness of the one side or the other, but because of the mode or theory they adopted to arrive at the result. Hence, we think it not important to array these gentlemen against each other by numbers. I imagine that if forty surveyors were upon the ground and started as Mr. Africa did, or Mr. Whitney, they would come to the same conclusion that they did—adopting his theory of ascertaining the monument and of making the survey. But if you start with an equal number of surveyors, with the road as fixed—the road determining in the manner you may all the points upon the ground and points outside, it is very likely that the result would be, I have no doubt, just as Mr. Roberts had located it, and proved it by Mr. Shunk and Mr. Worrall."

V. The court below erred in the general charge in assuming the facts in dispute to be proved, as appears from the following extracts therefrom, viz.:

1. "All the surveyors seem to agree upon that as that (northwest) corner of this piece of ground, so near that for my purpose you will understand that corner was practically adopted by all these surveyors. The line, we say, was obtained by Mr. Roberts by actual measurement located upon the ground; being a straight line, having but two corners, which which were easily run and marked upon the ground. That line, we say, leaves Mr. Harris in possession of this property."

2. "Now, it appears to me, that that point, or the points upon that end, the southeastern and southwestern points are the shifting factors in this dispute. The one is pushed over on Mr. Harris' ground, and the other, it is said, is just where it ought to be. The plaintiffs say that the location made by them—Mr. Whitney and others—satisfies the calls of the survey. In this they all agree—and of this they are all competent to speak—and they say it locates the draft accurately, and certainly satisfactorily to them; but the difficulty is that it takes

Mr. Harris' land, or lands of which he has been, in possession for this great length of time."

VI. The court erred in allowing a verdict to be entered against the plaintiff for that part of the land in dispute on which the tow-path was originally built, and as to which the defendant disclaimed by his draft and other evidence.

VII. The charge as a whole tended to mislead the jury, and to coerce a verdict against the law and the evidence.

*Hall & Jordan*, for the plaintiffs in error.—Most of the difficulties in this case originated in the mistaken idea that the state took only a right of way, instead of a fee simple, in the lands taken for the construction of the Pennsylvania Canal. Under this impression the parties to the Maclay partition had the lands abutting on the canal survey decreed to them to the middle of the canal; and their successors in title continued to convey in like manner for many years afterwards. It was not until the decision of the Supreme Court in Commonwealth' *v.* McAllister (2 Watts 190), decided in 1834, but not reported for several years thereafter, that the right of the state to a fee simple title was established; and for years subsequently the doctrine did not seem to be generally understood by the public. Hence, when the state changed the tow-path of the canal from one bank to the other, or in any other way relinquished the actual possession or occupancy of any part of its lands, before occupied for the purposes of the canal, it was a common thing for the riparian owners to occupy the premises thus relinquished, as the defendant did in this case, under the impression that the rights of the state thereto had ceased to exist. No doubt the canal commissioners and other State officials entertained this erroneous opinion of the law for many years after the McAllister case, and hence the mistakes and litigation of this character. The court, in affirming one of our points, correctly stated the law on this point, but in other parts of the charge so instructed the jury as to allow a verdict for the defendant, as if the point had been negatived. The portions of the charge assigned for error show that the court, having assumed that the defendant had been for a long time in possession of the land in dispute, repeatedly impressed on the jury that such possession gave possessory right against the plaintiffs as vendees claiming under the state canal title. The court further gave prominence to the defendant's theory of the location by reference to the old road as a landmark, and belittled the plaintiffs' evidence of location, as given by numerous surveyors who made examinations of the bed of the canal, in connection with the surveys. The plaintiffs presented evidence which, in several aspects, cumulatively supported their theory

of the true location ; but the court submitted but one view of the defendant's case, viz. : that one which consisted in running by courses and distances from the Runk corner. The charge as a whole tended to mislead the jury. This was error: Garrett *v.* Gonter, 6 Wr. 143, 146; Nieman *v.* Ward, 1 W. & S. 68 ; Gregg Township *v.* Jamison, 5 P. F. S. 468 ; Relf *v.* Rapp, 3 W & S. 21, 27; Heilbruner *v.* Wayte, 1 P. F. S. 259 ; Byles *v.* Hazlett, 11 W. N. C. 212 ; Parker *v.* Donaldson, 6 W. & S. 132; Railroad Co. *v.* Berry, 18 P. F. S. 272.

*George W. Harris* and *Hamilton Alricks*, for the defendant in error.—The question as to the title of the State to lands taken for canal purposes does not arise in this case, but is introduced by plaintiff in error as a make-weight. The court below affirmed the doctrine, as presented in plaintiff's point, that the State took a fee, and did not lose the title by abandonment.

In 1828 the canal was located on the land of William Maclay, when the State took all land necessary and convenient for the canal, basin and embankments, but never claimed the land in contention, because it was outside of the canal and tow-path, as built, and the defendant's witnesses showed that it is outside of the survey returned by the viewers. The public road referred to in the canal damage survey run on the ground, west of the canal, nearly parallel therewith, the entire length of the Maclay farm, and six hundred to eight hundred feet beyond it. No road ever crossed the canal diagonally on the Maclay land, as claimed by plaintiff in error. It was assumed by both parties that the build of the canal at the place in controversy was not changed, and the western line of the canal was straight; wherefore defendant maintained that inasmuch as one of plaintiff's witnesses showed that he found the center line of the canal, thirty-four and a half feet from the western line of the canal at the upper end, it was necessarily the same at the lower end. Both surveys called for the public road, as a monument on the ground; the experts called by the plaintiff disregarded the call, and thus impaired the force of their evidence.

The answers to the points and the charge were more favorable to the plaintiff below than the evidence justified: Little Schuylkill Nav. R. R. & Coal Co. *v.* French, 2 W. N. C. 718; Kiser *v.* Vanleer, 2 W. N. C. 561.

The expert witnesses of plaintiff below failed to satisfy the jury that the land was within the canal survey. The expert witnesses of defendant showed that the land in contention was outside of the canal survey and outside the monuments on the ground: Lodge *v.* Barnett, 10 Wr. 484; Craft *v.* Yeaney, 16 P. F. Smith, 210.

Mr. Justice MERCUR delivered the opinion of the court, October 2nd 1882.

This action of ejectment is for a piece of land about seventeen hundred feet in length, and varying from twelve to thirty-five feet in width. Both parties claim title under William Maclay. The contention is whether this land was taken and appropriated for permanent use by the commonwealth for canal purposes, under its right of eminent domain? For so much as was thus taken the heirs of Maclay received payment. The title thereto passed to the commonwealth in perpetuity, and from the latter to the plaintiff in error in fee: Commonwealth *v.* McAllister, 2 Watts 190; Wyoming Transportation Co. *v.* Price, 31 P. F. Smith 156.

The contention is one of fact. The plaintiff claims the land in dispute is part of a piece of eight acres and seventy two perches taken by the Commonwealth in 1828. It is, then, a question of location. It appears to be conceded by both parties that the northwest corner is pretty well established. A stone has been placed there. It is called the "Runk corner." The dispute is as to the precise location of the western line of the survey. Besides trying to locate by courses and distances, the effort is made to locate by monuments on the ground. On the part of the plaintiff evidence was given tending to establish the original marks and boundaries of the canal on the ground. The defendant's main effort is to locate the canal by fixing the location of a public highway which the canal appears to cross diagonally. The main complaint is that the case was not justly and fairly submitted to the jury—that the evidence and theory of the defendant were fully and prominently presented, and the strength of the plaintiffs' case was so presented as not to call their attention to the main points in the plaintiffs' case. If there be material misdirection in the charge of the court, it is sufficient ground for reversal, though no instructions were asked; and it is error to confine the attention of the jury to one view of the case, where there is more than one which they should consider: Garrett *v.* Gonter, 6 Wright 143; Relf *v.* Rapp, 3 W. & S. 21. If no particular instructions be asked, the court is responsible for the general effect only of the charge; and in considering the charge, the whole of it must be taken together. If when so considered it has a tendency to mislead, though no particular portion of it be clearly erroneous, it is cause for reversal: Washington Mutual Fire Insurance Co. *v.* Rosenberger, 3 W. N. C. 16.

The plaintiff gave evidence tending to prove by able engineers and surveyors the original marks on the ground. Thus, by one, that he had the sediment or mud removed from the upper side of the canal at several points, and found in several places the marks of the pick in the slate rock, distinctly showing the

cut of that line of the canal for considerable distance. From this he has no doubt that he found the true location of the centre line of the canal. If this evidence be correct it should be submitted to the jury as having great force, yet the evidence was incidentally referred to by the judge, and in a manner not calculated to induce them to give it a proper consideration.

Another experienced engineer testified substantially that with the original report of the viewers and the draft attached, he went upon the ground and examined the location. That he also found in the office of the auditor-general the contract relating to the construction of the canal, giving the dimensions of the portion which passed through the Maclay estate. He also carefully examined the lines of the survey made by John Roberts when the State took the land. Still another surveyor testified that, with a copy of the original survey when the lot was taken, he also went on the ground, found the Runk corner, and made a most careful, searching examination and survey. He examined the foot of the old or original slope of the basin, which constitutes a part of the land taken by the State, and was surveyed with the land occupied by the bed of the canal. These three witnesses concur with several others called by the plaintiff in sustaining the view that the defendant is in possession of a part of the land acquired by the Commonwealth; yet the evidence was not adequately presented to the jury by the court. Thus, in referring to some of the evidence of the plaintiff, the learned judge said, " if the western line is pushed over, it will appropriate that piece of land claimed by Mr. Harris." Most certainly it would include some claimed by him. This suit was brought for the purpose of recovering it, and the evidence was given to prove the plaintiffs' right thereto. The jury might well understand the remark of the judge as a caution to be careful about giving much weight to the evidence which tended to give to the plaintiff the land claimed by the defendant.

The evidence given by the defendant in regard to the location of the public road seemed to meet with more favor. The general tenor and effect of the charge does not stop with giving due and full weight to it, but is calculated to make it paramount to all the evidence of the plaintiff, and to make the evidence of the latter yield whenever it came in conflict with that evidence of the defendant. We think a sharply defined cut in the solid bank or rock on the side of the canal may be as satisfactory a monument of location as the track of a highway on the surface of the ground.

In ascertaining the boundaries of the land taken by the Commonwealth, if satisfactory monuments on the ground cannot be found, regard must be had to the purpose for which the land was to be used, as bearing on the quantity probably taken.

The purpose for which a canal is designed, and its practical enjoyment, requires not only the ground covered by water, and banks of sufficient strength to confine the water in place, but also a towing-path on one side, on which horses may travel, and a berme bank on the other against which boats may rest, and to which they may be tied.   The presumption is that the state took possession of land of a width necessary for the reasonable enjoyment of all rights appertaining to a canal.   This presumption stands until removed by evidence of actual possession taken of less ground.   It is not overthrown by evidence that the state did not use all of it continuously.

As time does not run against the commonwealth, and this suit was brought in less than twenty-one years after it parted with the title, no adverse possession can bar the plaintiff's right to recover.   Hence, the remarks of the learned judge as to possession of the defendant since 1828 were calculated to mislead the jury.   They should be distinctly told that he acquired no title by virtue of his possession; that it is to be considered only in so far as it bears on the question of the extent of the possession actually taken by the commonwealth.

It appears as if the plaintiff was denied a recovery for a part of the land on which the tow-path was originally built.   If this be so, it is clear error.

Without commenting further on the specifications in detail, they are affirmed in so far as they assign errors which are in conflict with the rules and principles declared in this opinion. ·

> Judgment reversed and a venire facias de novo awarded.

GORDON, TRUNKEY and STERRETT, JJ., dissented.