# Appeal of the Western Pennsylvania Railroad Company.

1. A railroad company authorized by its charter to construct its road from a city to another point may construct its road from any point within said city.

2. A railroad company authorized as aforesaid, obtained from the councils of the city from which it was to construct its road a grant of a right of way along a river bank to a certain street. It formally accepted the grant, constructed its road along the river bank to said street, and subsequently bought a lot upon said street on the opposite side of an avenue running along the river from that on which its tracks were constructed. The greater part of this lot it allowed to be used as a lumber yard. It fitted up, however, an old frame house standing thereon as a passenger station and erected a small shed for freight. Most of its freight business in the city was done elsewhere, and but a single track connected the shed with the main line. *Held*, that the power reposed in the railroad company to locate and establish a terminus had not been exhausted and that it was clearly competent for it subsequently to establish a terminus at another point within the city limits.

[Western Pennsylvania R. R. Co.'s Appeal.]

3. A railroad company is authorized by the Act of April 4th 1868, § 9, Pamph. L. 64, to construct a branch line from its terminus as well as from any other point on the main line of its road. Even, therefore, if the railroad company had in the case above stated definitely fixed its terminus, it would have been fully authorized by the terms of the said act in continuing its road along the river bank.

4. In the case above stated the railroad company made application to city councils for a grant of the right of way along the river bank, beyond the point to which the road had been originally constructed. The councils granted the right of way under certain conditions calculated to ensure the safety and convenience of the citizens. *Held*, that said councils were fully authorized by the provisions of the act of June 9th 1874, Pamph. L. 282, in making said grant, and that the railroad company were entitled to take advantage thereof.

5. The land of a railroad company, consisting of a portion of the bed of a disused canal, purchased from the Commonwealth, upon which no tracks are actually laid by the owner, although they shortly are to be laid, is liable to be crossed by the tracks of another railroad company in such a manner as will not interfere with the use thereof for the construction of a railroad.

November 10th 1881.   Before SHARSWOOD, C. J., MERCUR, PAXSON, TRUNKEY and STERRETT, JJ.   GORDON and GREEN, JJ., absent.

APPEAL from the Court of Common Pleas No. 2, of *Allegheny county :*   Of October and November Term 1881, No. 290.

Bill in equity between the Western Pennsylvania Railroad Company, complainant, and the Pittsburgh and Western Railroad Company, defendant.   The prayer of the bill was for an injunction to restrain the company defendant from constructing or laying its tracks upon certain land of the company complainant, or, in the alternative, for an injunction to restrain said company defendant from so constructing its tracks, until the court should determine upon what terms and conditions, in what manner, and at what grade said tracks should be constructed upon said land.   An answer was filed and the case was submitted to R. B. Carnahan, Esq., as examiner and master, by whom the facts were reported to be substantially as follows :

The Western Pennsylvania Railroad Company complainant is the owner of a certain part of the bed of the Pennsylvania canal in the city of Allegheny.   Its title is derived through divers mesne conveyances from the Commonwealth.   A portion of the bed of the canal thus owned is occupied by the tracks of the company complainant.   That portion, however, lying between Federal street and the Allegheny river is not so used, and is wholly filled up.   Three of the city streets cross it at grade, a sewer has been laid down by the city upon it, a number of lumber yards are therein situate, and in short there is scarcely any trace of the former canal.   The company complainant

averred, however, in its bill, that the whole of said portion of the canal was necessary for the present or prospective uses of the company, and as a matter of fact it appeared that some preliminary steps had been taken looking to the construction of the said company's tracks thereon.

The Pittsburgh, New Castle and Lake Erie Railway Co. was on September 22d 1877 duly incorporated with power to construct a railroad "from Allegheny city, in the state of Pennsylvania to the village of Wurtemburg, in Lawrence county, Pennsylvania." The said company immediately proceeded to build its road, and in November 1877 presented a petition to the councils of Allegheny city, praying for the grant of a right of way over the streets of the said city. In pursuance of this petition an ordinance was on December 21st 1877 passed by said councils, whereby they granted to said company a right of way "along the bank of the Allegheny river or upon River avenue, from the eastern terminus of the city to the east line of Sandusky street." This ordinance was duly accepted by the company on December 31st 1877.

After this date work was continued upon the road, but the same was not completed when, on August 27th 1879, the whole road was taken into execution and sold, the Pittsburgh and Western R. R. Co., defendant, becoming the purchaser. Said company at once took possession of the road in its unfinished state and completed the same along the river bank, up to the east side of Sandusky street. In the early part of January 1880, said company defendant bought for the sum of $11,000, a piece of ground on the east side of said Sandusky street, and on the opposite side of River avenue from that on which their main track was situate. The greater part of this lot was occupied by a board yard which the company has since allowed to remain there. Upon the residue of the lot stands an old frame building which the company fitted up for a passenger station and for offices. Near by they erected a small frame shed for freight. A single track connected this shed with defendant's main line upon the opposite side of River avenue, and it appeared that the greater part of the freight business was done elsewhere. The company defendant took no steps towards the erection of any more permanent buildings on said lot of ground, nor did they do any other act than those above set forth indicating an intention to fix their terminus at that point.

On September 9th 1880, the councils of the city of Allegheny passed an ordinance granting to the Pittsburgh and Western Railroad Company, defendant, a right of way along the banks of the Allegheny and Ohio rivers, or on River avenue westward from the east side of Sandusky street to the westward limits of the city. This ordinance, however, contained certain

terms or conditions, a breach or refusal to comply with any of which it was provided should work an immediate forfeiture of all rights and privileges granted. These conditions were in substance that the railroad should be so constructed as not to interfere with street crossings, or with the use of the wharves ; that the road should continue to be operated, that suitable· freight and passenger stations should be erected and maintained thereon within the city limits, that there should be no unjust discrimination in freight or fares, that the company should submit to and observe the municipal regulations with regard to speed of trains, gates, flagmen, &c.

The company defendant formally accepted this ordinance, and in pursuance thereof proceeded to construct their road along the river bank, proposing to continue the same so as to cross the company complainant's canal property close to the river by a bridge twenty-one feet above the level of said property. The company complainant thereupon filed the present bill seeking to enjoin the company defendant from constructing the said bridge.

The company complainant claimed that the company defendant had by its positive acts fixed its terminus on the eastern side of Sandusky street, and that it had no power to continue its road westward of that point. The master held, however, that there had been no such positive acts as to fix the terminus at that point. He held, moreover, that the continuance of the track westward from said point was fully authorized either by the Act of April 4th 1868, § 9, Pamph. L. 62, or by the ordinance of 1880, in pursuance of the provisions of the Act of June 9th 1874, Pamph. L. 282. He reported in addition that there was no reason why the company defendant should not construct its tracks over the land of the company complainant over the bridge proposed. He recommended, therefore, that the bill be dismissed.

Exceptions were filed to this report, which were dismissed by the court in an opinion by EWING, P. J. A decree was, however, entered, fixing the height of the proposed bridge at twenty-one feet, requiring that the same should rest on abutments entirely outside of the company complainant's land, and granting and securing to said company complainant the right to make use of the bridge, and to cross the tracks thereon at grade upon such terms as the court should specify.

The company complainant thereupon took this appeal, assigning for error, inter alia, the dismissal of the exceptions to the master's report and the entering of the decree as above.

*Hampton* and *Dalzell*, for the appellant.—The appellee having accepted the provisions of the ordinance of 1877, the same

constituted a contract between the appellee and the city, fixing and establishing the western terminus of the railroad at Sandusky street: Birmingham Pass. Ry. Co. v. Borough of Birmingham, 1 P. F. Smith 41.

Moreover, when the appellee entered into this contract, the same was complete and binding upon it, and its power to establish a new terminus was gone: Com. Dig. tit. Election, C. 2; Rol. Abr. 426, I. 15; State v. Norwalk & D. Turnpike Co., 10 Conn. 157; L. & N. B. Turnpike Co. 2 Swan (Tenn.) 282; Mason v. Brooklyn City &. N. R. Co., 35 Barb. 373.

A railroad company must accurately define in the first instance its termini. This is undoubtedly true in relation to roads: Road in Lower Merion, 8 P. F. Smith 66; Bean's Road, 11 Casey 280; Road in Lower Salford, 1 Casey 524.

The same principle applies with greater force to railroad companies that act independently of courts in locating their lines and establishing termini.

The proposed road could not be built as an extension of the old road. Although a railroad company may use some discretion in constructing its railroad, it cannot, after the road is located, make a relocation or abandon a route once adopted for a more eligible one, or use this power for making an extension: Peavey v. Calais R. R. Co., 30 Maine 498; Morris and Essex R. R. Co. v. Central Railroad Company, 2 Vroom 205; Moorehead v. Little Miami R. R. Co., 17 Ohio 340; Bruning v. N. O. C. and B. Co., 12 La. An. 541.

Nor can it be built as a branch or lateral road under the Acts of 1849 or 1868. Both of these acts clearly authorize branches from the main line between the termini, not prolongations of such main line beyond the termini.

The ordinance of 1880 cannot be claimed to authorize the proposed extension under the provisions of the Act of June 9th 1874, Pamph. L. 282. The intention of that Act was to authorize municipalities to contract with railroad companies as to the relocation of roads already within the city limits and not as to extensions or branches.

*A. M. Brown,* for the appellee.—The construction of the proposed road was clearly within the branching power conferred by the Act of April 4th 1868, § 9, Pamph. L. 62; Getz's Appeal, 10 W. N. C. 453; Mayor, etc., of Pittsburgh v. Pennsylvania R. R. Co., 12 Wright 355. But further, it is authorized by the ordinance of 1880. The Act of June 9th 1874, Pamph. L. 282, granted full authority to the municipality in the premises: Duncan v. Pennsylvania R. R. Co., 7 W. N. C. 551.

Railroad companies are incorporated, not for the promotion of mere private ends, but in view of the public good they may

subserve: Marsh *v.* Fairbury R. R. Co., 14 A. L. Reg. 561. The location of a depot has much to do with the accommodation of the public, and a court of equity will not compel a railroad company to permanently locate its depot at a particular spot, in order to subserve the private advantage of an individual: Marsh *v.* F. P. & N. W. R'y Co., 12 A. L. Reg. 390. A charter fixing the terminus of a road at or near a certain point gives the company a large discretion, which will only be interfered with where it has clearly exceeded its limits or acted in bad faith: Fall River Iron Works Co. *v.* Old Colony R. R. Co., 2 A. L. Reg. 699; Parke's Appeal, 14 P. F. Smith 137.

A corporation, by its delegated power of eminent domain, may take the property of another corporation, upon making compensation: 1 Redfield on Railways, part III., § 61, par. 1, 4, 10; Vermont *v.* Boston, C. & M. Railroad, 25 Vermont 433; Phila. and Reading R. R. Co. *v.* Philadelphia, 11 Wright 329; Com. *v.* Pa. Canal Co., 16 P. F. Smith 47; In re Towanda Bridge Co., 10 Norris, 216; Constitution of Penn'a, art. 1, § 10, and art. 16, § 3; Illinois Central R'y Co. *v.* United States, 20 Law Rep. 630.

Mr. Justice Sterrett delivered the opinion of the court, January 2d 1882.

The right of the Pittsburgh and Western Railroad Company, under its charter and ordinances of the city of Allegheny, to locate and construct its railroad along the Allegheny and Ohio rivers, within said city, from the eastern to the western boundary thereof, has been so conclusively shown by the learned master in his able and exhaustive report, that it is unnecessary to add anything to the reasons given or authorities cited in support of that conclusion.

The Pittsburgh, New Castle and Lake Erie Railroad Company, which was succeeded in title by the appellee, was incorporated in September 1877, under the provisions of the act of April 4th 1868, and its supplements, with power to construct a narrow guage railroad from Allegheny city to the village of Wurtemburg, in Lawrence county, Pa. The company, immediately after its organization, commenced the work of construction, obtained from the city of Allegheny the right of way for a single or double track "along the bank of the Allegheny river, or upon River avenue from the eastern terminus of the city to the east line of Sandusky street;" and in less than two years had completed the greater part of its road outside the city limits. In August 1879, all its property, rights, franchises, &c., were sold by the sheriff and duly conveyed to the purchasers, who associated themselves as the Pittsburgh and Western Railroad Company, by which name they were incorporated in October of that year. The new company, having thus succeeded to

all the property, rights and franchises of the Pittsburgh, New Castle and Lake Erie Railroad Company, took possession of the road and proceeded to complete the same. In the early part of January 1880, that portion thereof between the eastern line of Sandusky street and the borough of Etna was opened for trade and travel.

The main contention of appellant was that the Pittsburgh and Western Railroad Company has no authority to extend its road west of the eastern line of Sandusky street, because its predecessor in title had located, marked and determined the route of the road, and by accepting the ordinance granting the right of way to the east line of Sandusky street had selected and finally fixed that point as its western terminus; and also, because the appellee, after acquiring title, had completed the road to that point, purchased property, and established its terminal depot there. On the other hand, it was contended that the western terminus of the road had never been definitely settled either by the original company or its successor; that it had always been the fixed purpose of both companies, while they respectively owned and controlled the road, to reach the western boundary of Allegheny city, as soon as the necessary consent thereto of the city councils could be obtained. After a careful consideration of the evidence bearing on this subject, the learned master found in favor of the appellee; and in this we think he was clearly right. Without referring specially to the grounds on which his conclusions are based, it is sufficient to say that they are entirely satisfactory. The power to locate and establish the western terminus of the road in Allegheny city had not been exhausted by any act of appellant or its predecessor; and, by virtue of its charter and the ordinance of September 9th 1880, granting the right of way to the appellees, it is clearly authorized to construct and operate its road along the banks of the Allegheny and Ohio rivers, or upon River avenue to the western boundary of the city, subject to the conditions and restrictions imposed by the ordinance last mentioned.

It is true the original company was chartered to construct a road "*from* the city of Allegheny," &c., but that clearly means from any point within the city. Moreover, companies chartered either under the act of 1849 or the act of 1868, are expressly authorized to extend their respective roads into any city, town or village named in their charter as a terminal point, provided that in the case of an incorporated city, the streets, lanes and alleys thereof, shall not be occupied by any such railroad without the consent of the corporate authorities first had and obtained. In this case such authority was expressly given by ordinance.

Independently of the foregoing conclusion, and on the assump-

3 OUTERBRIDGE.—11

tion that the eastern line of Sandusky street had been selected and fixed by the company as the western terminus of its road, the learned master also held that the appellee is authorized to construct its road from the east line of Sandusky street to the western boundary of the city, either under the power contained in the ninth section of the Act of 1868, "to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public," or under the provisions of the Act of June 9th 1874, P. L. 282, in connection with the ordinance of September 9th 1880.

The branching power, given by the ninth section of the Act of 1874, is sufficiently broad and comprehensive to authorize the construction of the road in question as a branch; and there is no valid reason why it may not be constructed from the terminus as well as from any other point on the main line of the road. The letter, as well as the spirit of the section, justifies the construction put upon it by the master.

The Act of 1874 declares, "That the proper authorities of any county, city, town or township of this state, respectively, be and they are hereby authorized and empowered to enter into contracts with any of the railroad companies, whose roads enter their limits, respectively, whereby the said railroad companies may relocate, change or elevate their railroads within such limits or either of them, in such manner as in the judgment of such authorities, respectively, may be best adapted to secure the safety of lives and property, and promote the interest of said· county, city, town or township; and for that purpose the said authorities shall have power to do all such acts as may be necessary and proper to effectually carry out such contracts;" &c. This is a general law, manifestly intended to provide for a class of cases in which, before the adoption of our present constitution, special legislation was frequently invoked. As the natural result of the rapid development of our material resources and growth of population, especially in our larger cities, the public interest, convenience and safety from time to time require changes both in the location and construction of railroads. The legislature, recognizing these facts, authorized the proper authorities of the respective municipal districts mentioned in the act to enter into contracts for making such changes as in their judgment may be best adapted to secure the safety of life and property, and at the same time promote the interest of the particular municipality. The Ordinance of September 1880, which was accepted by the appellee and forms a contract between it and the city of Allegheny, is carefully drawn, and its provisions well guarded with the view of securing the several objects contemplated by the Act of 1874. If, in the judgment

of the city councils, the terms and conditions on which the right of way was granted to the appellee were best calculated to secure the safety of life and property and promote the interest of the city, their right to make the contract cannot be questioned; and it is equally clear that the appellee was authorized to accept and carry out the provisions of the ordinance.

We think, therefore, that on either of the grounds stated and discussed at length by the master, the appellee has the necessary corporate authority to construct its road from the eastern to the western boundary of the city on the route specified in the ordinances granting the right of way.

The corporate right of the appellee, thus to locate and construct its railroad, being settled, the next question is whether, for the purpose of either a grade or overhead crossing, it has a right to appropriate any part of the strip of land claimed by appellant under title derived from the Commonwealth. The validity of appellant's title, and its right to hold and use the strip of land known as the canal lot for railroad purposes cannot be doubted. It has been definitively settled, by an unbroken line of decisions, that the Commonwealth acquired an absolute estate in perpetuity in the land taken and occupied for canal purposes; and by virtue of the Act authorizing the sale of the main line of the public works and sundry mesne conveyances, that title, which for all practical purposes was a fee simple, became vested in the appellant company: Comm. v. McAllister, 2 Watts 190; Haldeman v. Penna. R. R. Co., 14 Wright 425; Craig v. Allegheny City, 3 P. F. Smith 477; Robinson v. West. Penna. R. R. Co., 22 P. F. Smith 316. By subsequent legislation the appellant was authorized to construct and maintain on the bed of the canal a railroad with branches, etc.

While the company appellant is thus invested with an absolute title in fee to the canal lot, with the right to use the same for railroad purposes, it by no means follows that its rights are so sacred or exclusive that, under a proper exercise of the power of eminent domain, its property may not be subjected to an easement in favor of the appellee or any other railroad company. If a crossing can be effected, either at grade or by means of a viaduct, without materially interfering with appellant in the exercise and enjoyment of its franchise, the right to make such crossing, upon paying or securing the payment of adequate compensation, cannot be doubted. As yet, appellant has not constructed a branch road at the point of the proposed crossing, but it is no doubt practicable to do so; and it is averred in the bill that in the judgment of its board of directors the time has come when a track should be built from low-water mark on the Allegheny river to the Pittsburgh, Ft. Wayne and Chicago Railway, by means whereof the company will have an

[Baldwin *v*. City of Philadelphia.]

outlet for its traffic to and from the river, as the Commonwealth had, when the canal was in operation. Assuming then that a transfer track will forthwith be constructed on the canal lot from the Pittsburgh, Ft. Wayne & Chicago Railway to low-water mark on the river, will the proposed crossing, by a viaduct at least twenty-one feet in the clear above low-water mark, supported by abutments located entirely outside the lines of appellant's lot, materially interfere with the use and enjoyment of such transfer branch? The decided weight of the testimony is that it will not; and the finding of the master, concurred in by the court, is to the same effect. The decree is accordingly so framed that the appellee, in constructing its bridge across the lot in question, is required to place the same "at such an elevation as to leave at least twenty-one clear feet between the lowest part of said bridge and the datum line of the city of Allegheny." The decree further provides "that said bridge shall rest on abutments entirely astride of the lines of plaintiff's property, and shall not be supported by any pier or other support resting on plaintiff's land; that defendant's road and the whole width of ground taken at the crossing of plaintiff's land shall not exceed twenty-four feet, and the length thereof shall be the width of plaintiff's land, which is sixty-two feet, more or less." And, in view of the future practicability or necessity for the appellant company to cross appellee's road at grade, the court has also very properly secured to it that privilege, coupled with the right to make application to the court for a decree defining the terms and conditions upon which such grade crossing shall be constructed and maintained.

After a careful examination of the record we find nothing in the decree of which the appellant has any reason to complain.

Decree affirmed and appeal dismissed at the costs of the appellant.