# Northern Central Railway Company's Appeal.

103  621
160  294
160  642

1. The provision in the constitution of 1874, that every railroad company shall have the right " to intersect, connect with or cross any other railroad," does not change the policy of the State as embodied in the Act of June 19th 1871, to prevent railroad crossings at grade where that is reasonably practicable.

2. Where the jurisdiction conferred by said Act of 1871 on courts of equity is invoked, it is for the court to ascertain, as a conclusion from the special facts and circumstances of each case, whether it is reasonably practicable to avoid a crossing at grade, and if so, to prevent such grade crossing, and by its decree define the mode of crossing to be adopted.

3. What is reasonable, is that which ordinary persons acquainted with the business would have anticipated as likely to be required—that which has usually been done by discreet and intelligent persons under similar circumstances.

4. Some of the factors which enter into the solution of the question of the reasonable practicability of an overhead crossing are: the location and surroundings of the proposed crossing, the character of the railroads and the use made and intended to be made of them, the increased cost and expense of construction and operation, the public safety and convenience, and the interests and convenience of the road intended to be crossed.

5. Under the evidence in this case the court below decided that an overhead crossing was not reasonably practicable, and entered a decree defining the mode in which a crossing at grade should be made and operated: *Held*, that the evidence warranted the findings of fact, the conclusion, and the decree, which was therefore affirmed.

May 17th 1883.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

APPEAL from the Court of Common Pleas of *Northumberland county:* of January Term 1883, No. 323.

This was an appeal by the Northern Central Railway Company, from a decree of said court, awarding an injunction restraining the appellant from interfering with the Shamokin, Sunbury and Lewisburg Railroad Company in their construction of a railroad crossing at grade at a point where Penn street, in the borough of Sunbury, intersects appellant's railroad, and from interfering with said Shamokin, &c. Railroad Company, in the operation of their railroad at said crossing, under the conditions set forth in said injunction.

Bill in equity, by the Shamokin, Sunbury and Lewisburg Railroad Company, complainants, against the Northern Central Railway Company, setting forth, inter alia, that the complainants, in the exercise of their corporate franchise, were constructing a certain line of railroad, in the location of which "it is necessary to cross the defendants' railroad at grade within the limits of the borough of Sunbury;" that the complainants had failed to agree with the defendant company upon terms of crossing, and the latter threatened to resist any crossing at grade of their railroad at said point. The complainants prayed that the defendants be restrained by injunction from preventing such crossing, &c., and general relief.

The defendants' answer, averred, inter alia, that a grade crossing as proposed by complainants was unnecessary, and that it was reasonably practicable to avoid the same by an overhead crossing at the desired point.

A great mass of testimony was taken, bearing directly or indirectly on the question of the reasonable practicability or impracticability of a crossing other than at grade, involving

questions of relative cost, of railroad engineering, and running of trains, of safety to the public, of damage to the road intended to be crossed, and to the borough in which the proposed crossing was located, &c., &c.

Counsel for the respective parties filed the following paper : " It is hereby agreed that in order to facilitate a decision in this case and to prevent delay, the reference to a Master is dispensed with. It is agreed to submit the case to the court in its present shape on bill, answer and testimony, that the court shall determine the facts, so far as they may deem material, and enter a final decree, both parties reserving all legal rights which they would have if the case would have gone to a Master and the facts had been found and reported by him to the court for argument and final determination. Right of appeal reserved."

ROCKEFELLER, P. J., acting as Master, afterwards filed a report ; his principal findings of fact are set forth, in substance, in the opinion of this court, and his conclusion, on the whole case, was that an overhead crossing was not reasonably practicable. He further reported the following decree :

First. That the plaintiff company shall have the right to construct and operate its railroad across the roadway and tracks of the defendant company at grade and over its adjoining land on the location proposed by the plaintiff company, but subject to the payment, when hereafter legally ascertained, of such damages as the defendant may thereby sustain.

Second. That such crossing must be constructed by the plaintiff company at its own cost, under the supervision of the chief engineer of the defendant company, or an agent duly authorized by him, within the period of one week after demand made by plaintiff company.

Third. The said crossing shall be kept in good condition by the plaintiff company, and the expense of repairing and renewing the same or any part thereof shall be borne by it. The chief engineer of the Northern Central Railway Company, or his duly authorized agent, shall have the right to say when, and in what manner, or to what extent, repairs or renewals shall be made, and may at his option have the said repairs and renewals done at the expense of the plaintiff company, and in such case the last-mentioned company shall pay the expense thus incurred to the Northern Central Railway Company.

Fourth. The plaintiff company shall erect and maintain a signal tower, at or near the said crossing, provided with a suitable signal apparatus, and shall keep a competent and careful watchman, or more if necessary, there at all times, whose duty it shall be to guard the said crossing by proper signals.

The place at, and the manner in which the said signal tower

and apparatus shall be erected and maintained, shall be determined by the chief engineer of the Northern Central Railway Company, or his duly authorized agent. The first cost and expense of erecting and equipping the said watch-tower, and all subsequent expenses of maintaining the tower and its equipment in good condition, shall be borne by the plaintiff company. The wages of the watchman at the signal-tower shall be paid by the plaintiff company, and the said plaintiff company shall be responsible for his acts or omissions.

Fifth. If the site of said signal-tower shall occupy any of the roadway of the defendant company, the damages for such occupation shall be assessed according to law, unless agreed upon by the parties, and shall be paid by the plaintiff company.

Sixth. In the use or working of the Northern Central Railway and the railroad of the plaintiff company at or near the point of crossing, trains, engines or cars of the plaintiff company shall come to a full stop at a distance of at least two hundred feet from the point of crossing, and shall not proceed until the proper signal shall have been given by the watchman in charge; and in moving from the point of stoppage the speed of such trains, engines, or cars shall not exceed        miles per hour until the crossing shall have been passed. When two trains or engines shall approach the point of crossing at the same time, and are within        feet of the same, the train or engine of the defendant company shall have the preference of the right of way, or the right to cross first.

Seventh. That the injunction prayed for be granted.

Eighth. That either party may, upon ten days' written notice, to be served upon any of the officers of the other company, apply to the court, if in session, or to the president judge at chambers, for such addition to or modification of these regulations as experience or observation may show the safety of persons or property seems to require.

Ninth. The injunction granted not to issue until some satisfactory arrangement is effected between the plaintiff company and the defendant company in regard to a site for a freight depot for defendant company, in accordance with the opinion of the court.

Tenth. That the costs be paid by the plaintiff company.

Exceptions filed by the defendants to the Master's findings of fact and law were overruled by the court (ROCKEFELLER, P. J.), and the above decree as reported by the Master was entered as the decree of the court, except that the ninth clause thereof was modified so as to read as follows :

Ninth. The injunction granted not to issue until the plaintiff company files a bond in the sum of $20,000, with sureties to be approved by the court, conditioned for the payment,

when hereafter legally ascertained, of such damages as the defendant company may sustain by reason of the plaintiff company constructing its railroad across the roadway and tracks of the defendant company at grade, and over its adjoining land on the location proposed by the plaintiff company.

The defendants thereupon took this appeal, assigning for error the dismissal of their exceptions to the Master's report, and the decree of the court as above.

*David W. Sellers* (*Wm. C. Packer* with him), for the appellants.—The main reason which impelled the court below to decide that an overhead crossing was not reasonably practicable, was that it would cost the company appellee a great deal more than a grade crossing. The court estimated the increased cost at $150,000 ; the highest estimate of appellees' engineers placed it at $350,000. Either of these sums, considered absolutely, is very large. But it is difficult for a judge to apprehend in its true relation the term " cost " in connection with such an enterprise as the one in question. It is a relative term. What would be an unreasonable and impracticable cost in the case of a short independent railroad running only between the termini named in the appellees' charter, would assume a very different aspect if the short road happens to be an essential connecting link in a great trunk line between the East and the West. The court below found as a fact (what was not denied) that the company appellee was called into existence at the bidding of the Philadelphia and Reading R. R. Co., to carry out a pre-existing contract with the New York Central and Hudson River R. R. Co., and several other railroad companies in the states of New York, New Jersey and Pennsylvania, whereby all the parties to the contract covenanted that upon the completion of two connecting links (of which the appellee's road was one) "the several lines of railroad owned, operated and controlled by them shall be used for the interchange of local and through traffic as a system of connecting lines forming *one through line from the city of Philadelphia to the city of Buffalo.*" Apart from the question of cost, the comparative disadvantages of a grade crossing were were so present to the mind of the learned judge, that in concluding his report as Master, he used the following language :

" I would state that I have given the questions involved in this case much thought. *Considering the interests of the public and those of the defendant company, I have sometimes doubted the correctness of my decision.* The town of Sunbury is already cut up with railroads *worse than any town of its size that I know of,* and the addition of *another* road through the very heart of it will doubtless cause the blocking up of the streets to be greatly increased, and which may in the course of time *more*

7 OUTERBRIDGE—40

*than balance the inconvenience of an overhead crossing*, no difference how it might be constructed. At present, however, on the whole case, the conclusion that such a crossing is not reasonably practicable is in accordance with my conscientious belief."

We ask this court to do, what the court below was unable to do, viz., to rise to such a breadth of view as to perceive the relative bearing of the question of cost in its true aspect—in the aspect in which experienced railroad men, engaged in the vast scheme of combining independent railroads into one great competing trunk line, would view it. If the appellees and those whom they represent wanted an overhead crossing at the point in question, its cost would be a matter of no moment to them, as compared with its value. Such cost should be pro-rated between the several interests. Under the Act of Assembly directing the court to prevent a crossing at grade, if an overhead crossing be reasonably practicable, the interests of the public, and of the previously established railroad ought to outweigh any mere consideration of cost to the projectors of the new railroad. The evidence showed that, on a grade crossing, trains running at the highest practicable rate of speed would necessarily occupy four out of twelve daylight hours in actual crossing. That does not begin to represent the extent to which the streets of Sunbury will be blocked, and the consequent danger and inconvenience to the public, because (among other things) the decree provides that all the appellees' trains, engines and cars shall come to a full stop at least 200 feet from the crossing, and await a signal to proceed; and in the plan proposed by appellees, such trains would then have to start on an up-grade. The damage to the company appellant would be incalculable; one element of such damage is thus forcibly stated by the court below:

"I find as a fact that the crossing of defendant's road and tracks for freight depot purposes, by the plaintiff's railroad at grade, will greatly impair the use of said tracks and freight depot, and probably compel the defendant to purchase another site for a freight depot, and construct other sidings, switches, &c., for the use of the same. This seems to be a necessary and not an unnecessary injury that the defendant will sustain if its road is crossed at grade. . . . . As at present informed, I do not know certainly that there is any remedy provided by any Act of Assembly to meet a case like this: . . . If the defendant will be deprived of its franchises or injured by reason of the acts of the plaintiff, there must be a remedy. Just what that is, I am puzzled to determine."

And the judge solved the difficulty by requiring appellees

[Northern Central Railway Co.'s Appeal.]

to secure the appellants' damages by filing a bond in the totally inadequate sum of $20,000.

*S. P. Wolverton*, for the appellees.—The development of the country and promotion of its prosperity, for which all corporate powers are conferred, are weightier considerations than private interests or the conveniences of corporations. The legislature never intended, in passing the Act of 1871, to prohibit grade crossings, merely because the older company would suffer inconvenience by the construction of such crossings. Since the passage of the Act 1871, great improvements have been made in the system of signals devised by modern engineers by which grade crossings can be made almost as safe as any other part upon the line of a road. Nine-tenths of all railroad crossings on appellants' road are at grade : See Report of Sec. of Internal Affairs on Railroads, 1881, pp. 565, 651.

The decision of the court below is supported by the evidence, and is in harmony with all the decisions under the Act of 1871: Pittsburgh and Connellsville R. R. Co. *v.* Southwest Pa. R. W. Co., 27 P. F. S. 173; Balt. & Cumberland Valley R. R. Co.'s Appeal, 10 W. N. C, 530; Catawissa R. R. Co. and P. & R. R. R. Co. *v.* North & West Branch R. R. Co. (affirmed March 12th 1883, on opinion of ELWELL, P. J., not reported).

Mr. Justice STERRETT delivered the opinion of the court, June 4th 1883.

The cardinal question in this case is, whether, under the facts disclosed by the testimony, an overhead crossing at the point in question is reasonably practicable.

In the fourth paragraph of the bill it is averred that, in the location and construction of appellee's railroad, it is necessary to cross appellant's road at grade within the borough of Sunbury. This is denied in the answer, the 9th paragraph of which avers that an overhead crossing, at the point proposed, could be made with reasonable practicability and at comparatively inconsiderable expense, either by plaintiff running over the top chord of its proposed bridge across the river, or passing over the bridge at a reasonable grade, rising eastwardly, and, after leaving the bridge, passing along Penn street upon trestles, leaving the street substantially unobstructed; thence, descending across an open and unobstructed country at a grade of twenty-eight feet per mile, against its trade. That this elevation would furnish exceptional facilities for unloading such quantities of plaintiff's expected trade in coal as might be consumed in the borough of Sunbury, and leave but a small disadvantage in receiving and discharging passengers and freight. The reasonable practicability of an overhead crossing is thus

put in issue by the answer. It is averred, in the sixth paragraph of the bill, that owing to the contour of the country on the west side of the river, the location selected is the only one where a bridge can be successfully constructed for appellee's railroad. The answer, denying this, avers that there are other points where a bridge could be successfully constructed consistently with the objects and purposes which appellee has in view in the construction of its road; but it is clearly shown by the testimony that there is no other point in the vicinity where a bridge adapted to the purpose intended could be constructed at a reasonable cost. Indeed it is not seriously questioned that appellee has located its road on the most direct route and on the best ground. The contention practically resolves itself into a question of grade on the line selected by the company, pursuant to authority conferred by its charter; in other words, whether the new road shall cross the Northern Central Railway at grade or overhead.

The first section of the seventeenth article of the constitution, which declares that "every railroad company shall have the right with its road to intersect, connect with or cross any other railroad, and shall receive and transport each other's passengers, tonnage and cars, loaded or empty, without delay or discrimination," does not change the policy of this state as embodied in the Act of June 19th 1871, Purd. 288, pl. 40. That Act gives courts of equity jurisdiction in relation to railroad crossings, and requires them "to ascertain and define by their decree the mode of such crossing which will inflict the least practicable injury upon the rights of the company owning the road which is intended to be crossed : and, if in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade." The vital question in every case still is, whether there shall be an intersection or grade crossing, or an overhead crossing. If the latter is found to be reasonably practicable, the former shall not be permitted. Either gives to the new road the right guaranteed to it by the constitution. It is entitled to a crossing, either at grade or overhead, but cannot claim both; and, in any event, it has a right to connect with the older road.

In Pittsburgh and Connellsville Railroad Company *v.* Southwest Pennsylvania Railroad Co., 27 P. F. Smith 173, the present chief justice, commenting on the act of 1871, says: "Two thoughts are clearly expressed in this statute. The one that no unnecessary injury shall be perpetrated on the road sought to be crossed; the other, that crossings at grade shall be prevented whenever they can reasonably be avoided. . . . The very language used implies that one railroad cannot be crossed by another without some injury to the company whose road is

crossed. But, if the injury is not such as will deprive the company of the exercise of its corporate rights, or seriously impair its operations, and is susceptible of compensation in damages, there is no reason why a railroad company should claim immunity from such injury any more than other corporations or individuals. . . . The development of the country and promotion of its prosperity, for which all corporate powers are conferred, are weightier considerations than private interests or the conveniences of corporations." The practicability of an overhead crossing depends almost entirely on the circumstances of each particular case. It is always a question of fact, or rather a conclusion drawn from a variety of independent facts and circumstances. The location and surroundings of the proposed crossing, the character of the railroads and the uses made and intended to be made of them, the increased cost and expense of construction and operation, the public safety and convenience, the interests and convenience of the road intended to be crossed, are some of the factors that enter into the solution of the question of the reasonableness of an overhead crossing. What is reasonable is that which ordinary persons acquainted with the business would have anticipated as likely to be required, namely, that which has usually been done by discreet and intelligent persons under similar circumstances.

By agreement of counsel in this case the appointment of an Examiner and Master was dispensed with, and the learned president of the Common Pleas consented to perform the duties of Master, in reporting the facts, and then passed upon the exceptions to his own report with like effect as if the case had taken its ordinary course. It therefore comes to us as though the facts upon which the decree is based had been found by a Master, and afterwards, upon due consideration, approved by the court. As was said in Baltimore and Cumberland Valley Railroad Company's Appeal, 10 W. N. C. 530, in which, as in this case, the facts were found by the court: "The findings of fact by the learned judge stand upon the same footing as the findings of a Master or the verdict of a jury. We can set them aside only on the ground of palpable error."

The elaborate report of the learned judge, acting as Master, contains such a full and, in the main, satisfactory discussion of the evidence upon which his findings of fact are based, that a review of the same is deemed unnecessary. Upon testimony which appears to warrant his conclusions, he has substantially found, inter alia, as follows:

1st. That an overhead crossing would cost from $300,000 to $600,000 more than a grade crossing, viz.: with embankment on level grade, without retaining wall, would cost $350,000 more; with embankment and retaining wall, on level grade $600,000

more; with an adverse grade of twenty-eight feet to the mile for thirty-five hundred feet; east of the crossing, $300,000 more; and with embankment, supported by retaining wall, with same adverse grade, $400,000 more.

2d. That to do the work in the same permanent and substantial manner that it has been done on the other part of appellee's railroad in the immediate vicinity of the proposed crossing, taking into consideration everything except damages for right of way, would cost about $150,000 more for an overhead than for a grade crossing; and that the damages for right of way would be from $40,000 to $50,000.

3d. That immediately over appellant's road an elevation of about twenty feet would be required: between that and the bridge the elevated road would be, in places, as high as the eaves of the houses, and its passenger depot would be about thirty-two feet above the surface of the ground. If the road is carried over a deck bridge, there could be no use made of the main line of the road by means of sidings, within the borough, to accommodate manufactories, nor could there be a depot for freight purposes in connection with the road, except by means of a spur siding to commence east of the town and run along the surface to such depot in the manner described by one of appellant's witnesses.

4th. That the construction of an overhead crossing and elevated approach to the bridge, either by means of embankment or trestles would be prejudicial to the interests of the borough through which the road passes.

5th. That extending the grade of twenty-eight feet to the mile the distance of thirty-five hundred feet would be some disadvantage, but the road could not be as easily and profitably worked as if it had the same grade for only a distance of twelve hundred and fifty feet, notwithstanding the trains would have to come to a stop.

6th. That by means of signals located at proper points for the protection of both roads, all trains on the plaintiff's road being required to come to a full stop at least two hundred feet from the point of crossing, and not to proceed until the proper signal for the purpose shall have been given by the watchman in charge, the danger of collisions will be very slight.

The learned judge, in summing up and stating the general conclusions from the facts found, says: "In view of the greatly increased cost of an overhead crossing, the damages to private property, the destruction, to some extent, of an entire street, the increase of the distance of a twenty-eight feet to the mile grade, the difficulty of having freight and passenger depots, the impossibility of making switches or sidings for the accommodation of factories or other business within the borough limits,

except the south-eastern part, and there only by a spur siding, all these, taken together with other facts already found, I am of opinion, and so find, that an overhead crossing is not reasonably practicable." Having found that the appellee had selected the best location and proposes to cross appellant's road at a point where no more harm will be done than would be occasioned by a grade crossing at any other point; and having found that an overhead crossing is not reasonably practicable, he also concluded that no unnecessary injury will be done to the appellant company by permitting a grade crossing on the terms and conditions specified in the decree.

From an examination of the testimony we are not satisfied there is any substantial error in the findings of fact upon which the solution of the main question depends. On the contrary, they appear to be sustained by the weight of the evidence. Applying the facts thus ascertained to the principles hereinbefore stated, there was no error in the conclusion that an overhead crossing at the point in question is not reasonably practicable. The assignments of error are not sustained.

> Decree affirmed and appeal dismissed at the costs of the appellant.