## APPEAL OF THE SHARON RAILWAY CO.

[Sharon Railway Co. v. Sharpsville Railroad Co.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MERCER COUNTY, IN EQUITY.

Argued October 8, 1888—Decided October 29, 1888.

1. The equitable powers conferred upon the Courts of Common Pleas by § 2, act of June 19, 1871, P. L. 1361, in regard to railroad crossings, cannot be invoked in favor of a railroad company whose primary object is to appropriate the lands or right of way of another company, the crossing of its tracks being a mere incident.

2. A railroad crossing within the meaning of that act is such a crossing only as appropriates no part of the land or right of way of the company whose track is to be crossed, to the exclusive use of the company seeking to cross.

3. Where land acquired by one railroad company is necessary to enable it economically and expeditiously to carry on its present and prospective business, it cannot afterwards be taken for a like use by another company except in a case of absolute necessity, not for mere economy and convenience.

Before Gordon, C. J., Paxson, Sterrett, Clark and Williams, JJ.; Green and Hand, JJ., absent.

No. 124 October Term 1888, Sup. Ct.; court below, No. 3 September Term 1884, in Equity.

On August 12, 1884, The Sharon Railway Company filed a bill in equity against The Sharpsville Railroad Company, The Balt. & O. Railroad Co., Walter Pierce, and others, praying upon the averments therein set forth, as follows:

1. That the said defendants may be restrained from entering upon, occupying or constructing said railroad upon any of your orator's aforesaid lands, and any lands embraced in the right of way for your orator's said railroad, and from cutting, occupying or in any manner interfering with the slopes of your orator's said railroad.

2. That the defendants may be restrained from constructing a railroad through or into your orator's yard at or near Boyce, Rawle & Co.'s furnace, or across any of your orator's railroad

tracks or connections, and from in any manner interfering with the same; or, if that cannot be done, that the court may, by its decree, define the terms and conditions upon which said defendants may be permitted to cross.

3. Such other and further relief as to the court may seem proper and meet.

Upon the filing of the bill a preliminary injunction was awarded as prayed for, and on August 21, 1884, The Sharpsville Railroad Co. filed an answer setting out the facts of its defence and concluding:

Wherefore this defendant joins with the said complainant in asking:

1. That the court ascertain, in accordance with the provisions of the acts of assembly for such cases made, whether or not the said crossings of the Sharon Railway by this defendant's said branch railroad otherwise than at grade be reasonably practicable, and if it be found not reasonably practicable for this defendant's said branch railroad to cross said Sharon Railway except at grade, that the court by its decree define the rights of this defendant in the premises, and the terms and conditions upon which this defendant may cross at grade with its said branch railroad the said several tracks of the Sharon Railway now constructed and about to be constructed as aforesaid.

2. And further that the court may by its decree protect this defendant in the exercise of its rights.

3. And further, that as to all other matters and things in the said bill alleged not relating to the said crossings at grade this defendant be hence dismissed, with its reasonable costs.

On October 4, 1884, issue having been joined, *Mr. B. Magoffin* was appointed examiner and master, who on September 10, 1887, filed a report which was in part as follows:

The issue as made up involves two questions:

1. Whether the defendant company has the right, in the exercise of its corporate franchises, to locate and construct a branch railroad through, and, by so doing, appropriate to its own use, lands acquired, owned and used by the plaintiff company as a yard for storing, assorting and distributing cars? and

2. If it has the right to so appropriate said land, whether it

be reasonably practicable for the defendant company in passing through the plaintiff company's yard to avoid crossing the tracks of the latter company at grade?

To aid the master in determining these questions, the testimony of a great many railroad men, master mechanics, civil engineers, contractors, etc., was taken, and maps and profiles offered in evidence, and the master himself visited the ground on two or three occasions. From the testimony taken, maps and documentary evidence submitted, the bill and answer, the personal inspection, the master finds and reports the following facts:

1. The Sharon Railway, plaintiff in this case, is a corporation duly organized under the laws of the state of Pennsylvania, by articles of association dated July 14, 1873, and articles of merger and consolidation with the Sharpsville, Wheatland, Sharon & Greenfield R. Company, dated December 12, 1875, and by virtue of its charter and articles of consolidation was authorized to, and did actually survey, locate and construct, a railroad from the borough of Sharon northward along the old Erie canal to connect with the N. Y., P. & O. R. at Sharon Junction, a distance of about ten miles; and also from Sharon southward into the borough of West Middlesex, a distance of about six miles; both of which roads are main line, and over both freight and passengers are carried.

2. In the year 1874, said Sharon Railway surveyed and located a branch road from its main line near the furnace of Boyce, Rawle & Co., in Hickory township, northward into the borough of Sharpsville, leading to the Douglass and Spearman furnaces, and during said year 1874, and the year following, graded and constructed said branch road to a point known as the Strawbridge north line, a distance of about two thousand three hundred feet, and in July, 1884, completed the same to Cherry street in said borough of Sharpsville; the said branch road as located and constructed occupies the steep bluff bounding the old Erie canal on the east, and is known in this controversy as track C.

3. In 1874 and 1875 the plaintiff company acquired by purchase from various persons certain pieces of real estate, lying west and south of the furnace property of Boyce, Rawle & Co., and adjoining its main line on the east, for the purpose and

with the intent of locating its distributing yard there, for the accommodation of the business of its road and branches; and the land so acquired is conveniently located, well suited and necessary to enable the plaintiff company economically and expeditiously to carry on its present and prospective business. That throughout the length of the land so acquired for yard purposes, the plaintiff company is obliged to keep an open water course about six feet wide at the bottom and about eighteen feet wide between the banks at the top, being the bed of the old canal, to supply water to the iron manufacturing establishments along the line of said old canal.

5. The plaintiff company has also now located and constructed on said land various other tracks, known as tracks B, D, F and K, as shown on the maps, which connect with its main line and track C, and which are all used by it in carrying on its present freight business, and are necessary for the convenient and economical transaction of said business.

6. The Sharpsville Railroad Company, defendant in this case, is also a corporation duly organized under the laws of the state of Pennsylvania, by articles of association dated March 3, 1876, and by virtue of its charter and articles of association is authorized to construct, maintain and operate a railroad "from a point in the borough of Sharpsville, in the county of Mercer, at which a connection with the Sharon Railway may conveniently be made; thence to and across the line and tracks of the Erie and Pittsburgh Railroad, and to a connection with that railroad, and through the southwestern portion of the county of Mercer to and into the township of Wilmington in the county of Lawrence; thence through the said township of Wilmington to a connection with the New Castle and Franklin Railroad; thence across said New Castle and Franklin Railroad, and through the northeastern portion of the county of Lawrence, to and into the county of Butler, and to a point in the township of Cherry, in said last named county, to connect with the Shenango and Allegheny Railroad, and with any public railroad built or to be built in or through the northern part of the county of Butler,"—a distance of about thirty-five miles.

7. That in pursuance of its charter and articles of association, the said Sharpsville Railroad Company located and con-

structed, and now maintains and operates, a railroad from a point of connection with the Sharon Railway in the borough of Sharpsville, to Wilmington Junction in the county of Lawrence, where it connects with the Buffalo, New York & Philadelphia Railroad (late New Castle & Franklin), a distance of about seventeen miles.

8. That since the construction of its main line, as above stated, and the occasion of the present controversy, the said Sharpsville Railroad Company has located a branch railroad, called the Sharon Branch of the Sharpsville Railroad, beginning at the western terminus of its said main line in the borough of Sharpsville, thence south along the east bank of the old canal, and crossing at grade track C and other tracks of the Sharon Railway near the furnace of Boyce, Rawle & Co., also crossing at grade the track of the Middlesex line of said Sharon Railway about 4000 feet further south, known in this controversy as the water-tank crossing, near the borough of Sharon.

9. That the line of said Sharon branch of said Sharpsville Railroad, as the same had been located and as it was proposed to build it at the time the injunction was granted in this case, passed longitudinally through the land of the Sharon Railway, not including the land taken at the water-tank crossing, for a distance of about 2600 feet, of an average width of about 50 feet, and crossing track C at grade at an angle of 6 deg. 15 min.; but after plaintiff had closed its testimony in chief, and defendant was proceeding with its testimony, W. C. Agnew, the assistant general manager of the Sharpsville Railroad Company, announced that a change had been made in the location of said Sharon branch, through the land of the Sharon Railway, which change had been ratified and approved by the board of directors of said Sharpsville Railroad Company, by resolution adopted May 25, 1885, and that he had prepared a map of the changed location, showing that the point of crossing of track C was thrown further south, and the angle of the crossing increased to 11 deg. 18 min., which map was offered in evidence by the defendant, and is marked exhibit No. 2. That the new location thus proposed by the defendant company for its Sharon branch passes longitudinally through the land of the plaintiff company as follows: Begin-

ning at the north line of Boyce, Rawle & Co.'s land, thence south through land of plaintiff lying between its main track and its track C for a distance of 550 feet to the point where it is proposed to cross said track C at grade, appropriating a strip of land, not including allowance for slopes, 16 feet wide for that distance; thence from the point of crossing south for a distance of about 1400 feet, appropriating a strip of land varying in width but averaging about 36 feet wide, making a total of 1950 feet in length, of an average width as above stated, not including slopes; and if we add to this the water-tank crossing, where a strip, not including allowance for slopes, 16 feet wide for a distance of 200 feet, is appropriated, we have a grand total in distance or length of about 2150 feet, by a width averaging about 36 feet, of the land of the plaintiff company, sought to be appropriated by the defendant company upon or over which to construct its branch road, according to its exhibit No. 2.

10. The master also finds, that in the location and construction of its Sharon branch from the borough of Sharpsville down to the north line of the land of Boyce, Rawle & Co., the said defendant company has for quite a distance encroached upon the road-bed or slope of the plaintiff company's track C : but he further finds that these encroachments could be easily remedied and would not interfere with the safe and successful operation of track C, as retaining walls could be constructed at small expense at such points as there might be danger of the road-bed of track C sliding, without affecting its usefulness or convenience.

The foregoing are, I believe, the material facts in this case, and are, at all events, the facts which must control in its determination.

If the question involved were simply the right of defendant company to cross at grade with its branch road the track or tracks of the plaintiff company at or near the furnace of Boyce, Rawle & Co., including the right to occupy for crossing purposes only so much of the right of way or land of plaintiff as might be necessary for that purpose, the position and argument of the learned counsel for the defendant could not, perhaps, be successfully met. Indeed, if that were the

only question in the case, the master is inclined to believe that, under the principles of law governing crossing cases, he would probably reach the same conclusion as defendant's counsel. But when it is considered that the proposed branch railroad, beginning at a point 550 feet north of the point of crossing and proceeding thence south longitudinally through the land of the plaintiff company for a distance of about 1900 feet, crossing the track or tracks of the plaintiff in its course, at the sharp angle of 11 deg. 18 min., it is plain that the crossing is only secondary or incidental to the appropriation of the land. It seems to me, therefore, impossible to separate the consideration of the questions involved in the attempt to locate a grade crossing over the plaintiff's tracks, under the facts of this case, from the questions involved in the attempt to appropriate the plaintiff's land, and the proper determination of this latter question, in the opinion of the master, will dispose of the former.

The real question, therefore, is, can the defendant company, in its exercise of the right of eminent domain, appropriate to its own exclusive use and occupancy, land acquired, owned and used by the plaintiff company for the convenient and economical transaction of its corporate business, and for yard purposes? And particularly, when it is only a branch road the defendant seeks to construct through said land?

\*  \*  \*  \*  \*  \*  \*  \*

It would seem the primary purpose had in view by the persons who organized and obtained a charter for the defendant company, had been accomplished as soon as they had located and constructed their railroad from a point of connection with the plaintiff company's railroad in the borough of Sharpsville to Wilmington Junction in Lawrence county, and that to continue their line from its Sharpsville terminus down to the borough of Sharon would be an extension of the main line rather than a branch. Perhaps, however, under the general authority given to said defendant company in its charter, and under the ruling of the Supreme Court in West. Penn. R. Co.'s App., 99 Pa. 155, it has the power to locate and construct a so-called branch from its Sharpsville terminus to Sharon, provided it does not materially interfere with the vested rights and franchises of sister companies. It will be

observed, however, that said defendant company can only claim this power under a general authority and not by any express grant; that whilst the plaintiff, in the exercise of its undoubted corporate rights, acquired the land, which is the occasion of the controversy, for yard purposes, the defendant can only claim the right to appropriate a part of said land as an incident to an incidental right it has to construct such a branch as is contemplated in this case. The right of the defendant to appropriate said land, under the facts of the case, the plaintiff denies.

That property owned by one railroad company may be appropriated by another railroad company exercising the right of eminent domain, cannot be denied. But that a railroad company may acquire real estate for present business necessities, as well as in view of prospective increase, and hold the same without risk of being infringed upon or taken from it by another company, I think is also true. At all events, there must be a necessity for the taking, and as was said by Mr. Justice GORDON, in Penn. R. Co.'s App., 93 Pa. 150, "a necessity so absolute that, without it, the grant itself will be defeated. It must, also, be a necessity that arises from the nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of economy."

We have already seen that the defendant company has constructed the railroad contemplated at the time its charter was obtained, from a point of connection with the plaintiff company in the borough of Sharpsville to Wilmington Junction in Lawrence county. There is no necessity, therefore, to prevent a failure of its chartered purposes, that it should be allowed to take complainant's land. The only purpose it has in view in desiring to construct a branch to Sharon, is that it may carry its own freight to and from the Sharon furnaces, and the furnace of Boyce, Rawle & Co., instead of receiving it from or turning it over to the plaintiff company as the case may be.

*    *    *    *    *    *    *    *

Under the facts, therefore, as they were developed in this case, and as they have been found, and the principles of law applicable thereto, the master is of the opinion that the defendant company cannot be allowed to construct its branch railroad

through the plaintiff company's yard as located at grade, and would recommend a decree to that effect.

[If the issue had been confined to the one question, of the right of the defendant to appropriate the plaintiff's land, it is probable, with its determination in favor of the plaintiff, the master's duties would have ended, but whilst the bill denies the right of the defendant to construct its branch line as located through the land of the plaintiff, it seems also to recognize a right in the defendant to construct said line provided it can be done without materially interfering with plaintiff's franchises. Under the provisions of the act of June 19, 1871, P. L. 1361, and particularly the second section, of said act, perhaps this view is correct. In order, therefore, to show that there were other available routes which the defendant could adopt, or that it might cross over plaintiff's tracks by a viaduct, without doing any serious damage, the plaintiff introduced a large volume of testimony, and the inquiry was thus enlarged.] [1]

Considering the testimony introduced upon this inquiry, the master recommended a decree in substance allowing the defendant company to construct its road through the plaintiff's land by a proposed line M., somewhat variant from the located line of defendant, and passing over the plaintiff's tracks by a viaduct, and also allowing the defendant to cross the Middlesex line, near the water tank, at grade.

The plaintiff company filed an exception to that part of the report in [ ] [1], and to the decree recommended by the master, claiming that the master, having found all the facts and the law in favor of the plaintiff, and that the defendant had no right to appropriate any of the land of the plaintiff now occupied and used or intended to be occupied and used by it for a yard, and that the same was necessary for that purpose, should have recommended a decree restraining the defendant from interfering with said land in any way, and was not justified by the pleadings in recommending a decree permitting the defendant to cross plaintiff's land by a viaduct; and, therefore, the plaintiff moved the court to overrule that portion of the master's report and to make a decree restraining the defendant from crossing said land in any way whatever.

A number of exceptions were filed by the defendant com-

pany, and after argument, the court, MEHARD, P. J., on May 14, 1888, filed an opinion in which it was held, inter alia, that " the whole of this land is not necessary for the plaintiff's uses, but that sufficient can be spared to allow defendant a way for a single track and enough still be left for the convenient and proper exercise of plaintiff's franchises, regard being had, not only to the present, but also to the future wants of the plaintiff." For reasons set forth in said opinion the decree recommended by the master was declined, and a decree made dissolving the preliminary injunction then existing, after ten days from date; giving to the defendant company the right to construct its branch railroad across the roadway and tracks of the plaintiff's branch C, at grade, and over its adjoining land, on the location proposed by defendant and shown by exhibit No. 2; also to construct and operate its branch railroad across the roadway and tracks of plaintiff's Middlesex branch at grade, and over its adjoining land on the said location; but subject to the payment, when thereafter legally ascertained, of such damages as the plaintiff company might thereby sustain; the said decree containing various provisions defining and establishing the rights of the parties respectively.

Thereupon the plaintiff took this appeal, assigning said opinion and decree as error.

*Mr. Thomas Tanner* and *Mr. Samuel Griffith*, for the appellant:

This case is on all fours with Pittsb. Junction R. Co.'s Appeal [ante 511], and if the principles laid down in that case are to stand, the decree of the court below should be reversed and the defendant enjoined from occupying any part of the plaintiff's land.

The argument upon the findings of fact is not briefed.

*Mr. A. F. Henlein* (with him *Mr. Johns McCleave*), for the appellee:

The facts of this case are to be distinguished from those of Pittsb. Junction R. Co.'s Appeal, relied on by the appellant, in two very important particulars:

1. The construction of the proposed branch is not a material interference with the franchises of the plaintiff: West. Penn. R. Co's App., 99 Pa. 156.

2. The proposed branch must be constructed on its location or it cannot be constructed at all: Pittsb. Junction R. Co's App. [ante 511]; Penn. R. Co's App., 93 Pa. 163.

The argument upon the findings of fact is not briefed.

OPINION, MR. JUSTICE PAXSON:

This case is ruled by Pittsburgh Junction Railroad Company's Appeal [ante, 511]. In that case the Junction Railroad Company sought to pass through the yard of the Allegheny Valley Railroad Company in the city of Pittsburgh, and in doing so attempted to appropriate a strip of land 24 feet wide, between Forty-third and Forty-seventh streets. The case was referred to a master, and upon the hearing an attempt was made to change the location, upon the theory that it was a case of grade crossing. This was precisely what was done below in the case in hand.

The defendant, the Sharpsville Railroad Company, located a branch of its road through the yard of the Sharon Railway, appellant, and filed its bond in the usual manner to secure the damages. The appellant then filed this bill in the court below to restrain the appellee from so appropriating its land. When the case came on for a hearing the appellee had changed its location, but still passing through appellant's yard, and claimed the right to lay its track upon the line thus newly appropriated, and for which it had not given bond, with security, as required by the act of assembly. To meet this difficulty it was attempted to turn it into a case of grade crossing. That it is not a case of grade crossing is too plain for argument. It requires but a glance at the plans and exhibits to see that the primary object of the appellee was to appropriate appellant's land, and that the crossing was a mere incident. The equitable powers of the Court of Common Pleas, as conferred by the second section of the act of June 19, 1871, in regard to railroad crossings, cannot be invoked in such a case as this. By a railroad crossing within that act is meant such a crossing only as appropriates no part of the land of the company whose track is to be crossed, to the exclusive use of the company seeking to cross. The question before the master and the court below was whether the appellee had the right, for its own convenience and benefit, to appropriate a considerable portion of the yard

of the appellant. It is true the prayer for relief in the plaint-
iff's bill is in the alternative; that if the defendant cannot be
restrained from constructing its road through plaintiff's yard,
that the court may, by its decree, define the terms and condi-
tions upon which said defendant may be permitted to cross.
It is also true that the plaintiff offered evidence before the
master that a line could be made that would do less injury to
plaintiff than the route indicated. This, however, was in re-
buttal of defendant's evidence tending to show that the route
proposed was the only one reasonably practicable. Besides, the
alternative prayer referred to a crossing merely, and not to an
appropriation of its yard.

The land in question was acquired by the appellant company
in entire good faith several years before this controversy com-
menced, for the purposes of a yard. I do not understand this
fact to be disputed. It is true the learned judge below was of
opinion that portions of the tracks in this yard were not con-
structed until about the time this bill was filed, and that "the
primary purpose in their construction was to obstruct the build-
ing of defendant's branch." We cannot adopt this finding in
the sense in which the court below put it. The delay in build-
ing these tracks is accounted for by the poverty of the com-
pany. The master distinctly finds the fact that the land was
acquired by appellant in 1874 and 1875, "for the purpose and
with the intent of locating its distributing yard there for the
accommodation of the business of its road and branches; and
the land so acquired is conveniently located, well suited, and
*necessary*, to enable the plaintiff company to economically and
expeditiously carry on its present and prospective business."
Under such circumstances the precise time when its tracks in
the yard were laid is not material.

We have then the finding of the master, based upon ample
testimony, that the land in question was acquired by the appel-
lant company for the uses of its road, and that the same is
necessary therefor. Can it now be taken by another corpora-
tion for the same or a similar use? It certainly cannot be done
for the mere convenience or profit of the latter. To justify
such taking there must be a necessity; "a necessity so absolute
that without it the grant itself will be defeated. It must also
be a necessity that arises from the very nature of things over

which the corporation has no control; it must not be created by the company itself for its own convenience or for the sake of economy:" Pennsylvania Railroad Co.'s App., 93 Pa. 150. To the same effect is Pittsburgh Junction Railroad Co.'s Appeal, supra. I will not stop to discuss or vindicate this rule. It is settled law, and rests upon sound principles. The cases of Appeal of Western Pennsylvania Railroad Company, 99 Pa. 155, and Northern Central Railway Company's Appeal, 103 Pa. 621 have no application. They were cases of grade crossings under the act of 1871.

If there is any absolute necessity for the appropriation of plaintiff's yard by the defendant company it has not been shown. Certainly its failure to so appropriate it will not defeat its grant or the purpose for which it was chartered. The master finds: "We have already seen that the defendant company has constructed the railroad contemplated at the time its charter was obtained, from a point of connection with the plaintiff company in the borough of Sharpsville to Wilmington junction in Lawrence county. There is no necessity, therefore, to prevent a failure of its chartered purposes, that it should be allowed to take complainant's land. The only purpose it has in view in desiring to construct a branch to Sharon, is that it may carry its own freight to and from the Sharon furnaces, and the furnace of Boyce, Rawle & Co., instead of receiving it from or turning it over to the plaintiff company as the case may be."

Granted that the defendant company has the power to build this branch, and that the same would be convenient and even profitable, it cannot be said that its construction was the primary purpose for which it was chartered, or that its failure to do so will destroy its grant. The branch is but an incident to the main object of the company, and it cannot pursue the incident to the destruction of the rights of other parties. Land once appropriated by a railroad company to public use under the right of eminent domain cannot afterwards be appropriated by another company to the same use excepting in a case of absolute necessity. Such necessity does not appear in this case.

The learned master says, near the conclusion of his report: "Under the facts, therefore, as they were developed in this

case, and as they have been found, and the principles of law applicable thereto, the master is of the opinion that the defendant company cannot be allowed to construct its branch railroad through the plaintiff company's yard, as located, at grade, and would recommend a decree to that effect." Had the master stopped here, there would have been no room for criticism. But at this point he appears to have turned the case into one of grade crossing and proceeds to locate defendant's road through plaintiff's yard, under the act of 1871, under the impression that plaintiff's bill, while denying the right of the defendant to construct its branch line as located through the land of the plaintiff, yet seems also to recognize a right in the defendant to construct said line, provided it can be done without materially interfering with plaintiff's franchises. We do not so understand the bill. The eighth paragraph thereof avers " That there is no engineering or other necessity for crossing complainant's railroad tracks as proposed by defendant, or for cutting into, or in any manner interfering with the embankment or slopes of your orator's railroad hereinbefore complained of, but it is entirely practicable to avoid said yard and said grade crossings, and to avoid in any manner interfering with or trespassing on your orator's railroad or property."

I see nothing in the bill to sustain the view taken by the master upon this point. The alternate prayer for relief certainly cannot commit the plaintiff to this view, nor can the evidence offered by plaintiff to show that another location through its yard would do less damage than the one located, be treated as a recognition of defendant's right to construct its road through plaintiff's yard. The true issue was, not whether the defendant's route would do plaintiff the least injury; not whether the defendant could cross at grade, or by an overhead track, but whether it had the right to appropriate plaintiff's land at all. This issue was lost sight of by the court below, and to some extent by the master.

The facts were accurately and carefully found by the master. The court below reversed him but without materially interfering with his findings of facts. We see nothing in the case to lead us to doubt their accuracy. The master had the witnesses face to face before him; he moreover was upon the ground and examined it in connection with the plans with

much care. Upon the facts as found by him we are all of the opinion that the injunction should have been awarded.

> The decree is reversed at the costs of the appellee, and it is ordered that an injunction issue as prayed for in the plaintiff's bill.